TONY MANNARINO, Plaintiff, *v.* PRESIDENT AND DIRECTORS OF THE MANHATTAN COMPANY, Defendant.

City Court of New York, New York County, January 22, 1936.

George B. Levy, for the plaintiff.

Weller, Rogers, Bergen & Rochford [C. Ellis Schiffmacher of counsel], for the defendant,

MADIGAN, J. Invoking the "trust fund" provision of section 36 of the Lien Law, as amended by section 17 of chapter 859 of the Laws of 1930, plaintiff seeks summary judgment.

Plaintiff, the assignee of a contractor, contends that, by reason of either of two payments which were made to defendant by the owner-builder, plaintiff is entitled to judgment. One of those payments amounted to $3,000, the other to $7,000.

It is conceded "that for the purpose of this motion, an issue of fact has been raised as to the Three Thousand ($3,000)."

As to the $7,000 item, the application will be disposed of on the understanding, indicated by affidavits and briefs, that plaintiff, on this motion, does not dispute the assertion that the $7,000 went

into the construction of the improvement, to pay materialmen and contractors. All references below to the $7,000 item are made on the assumption that the $7,000 went into construction; and all such references are, therefore, to be understood as relating solely to this motion, inasmuch as plaintiff's concession as to the $7,000 relates solely to this motion.

Plaintiff contends that, under the circumstances here, the $7,000 cannot be regarded as " cost of improvement." (Lien Law, § 2, as amd. by Laws of 1930, chap. 859, § 1.)

It appears from an affidavit submitted by plaintiff that a deed, to the owner-builder, of four lots or parcels of land in Queens county, N. Y., was recorded on January 10, 1931, and that a building loan agreement, between the owner-builder and Brooklyn Mortgage Guaranty and Title Company, executed January 7, 1931, was filed on February 13, 1931, the loan to be for the erection of four dwelling houses on the land referred to above. The building loan agreement made no reference to advances, from defendant, aggregating said $7,000 or to repayment of same.

There is evidence that defendant's representative was informed by officers of the owner-builder that arrangements had been made for the said building loan; that defendant was also thus informed that it would be necessary for the owner-builder to have moneys for the construction of the buildings, in order to make payments for material and labor, while awaiting advances to be made under the building loan agreement; and that accordingly, defendant, prior to the first payment under the building loan agreement, advanced the $7,000 referred to above, $3,000 on February 2, 1931, and $4,000 on February 13, 1931, same being advanced " with the understanding between the defendant " and the owner-builder " that the moneys were to be used in connection with " the building operation mentioned above and with the further understanding " that these moneys, so to be used in connection with this building operation * * * were to be repaid " to the defendant " out of the proceeds of the building loan mortgage."

The first payment by Brooklyn Mortgage Guaranty and Title Company on account of the building loan mortgage seems to have been made on April 16, 1931. The $7,000 was repaid to defendant out of proceeds of the building loan, $3,000 being repaid on June 2, 1931, $500 on July 10, 1931 (not April 10, 1931, as stated in one affidavit), and $3,500 on August 27, 1931.

Plaintiff relies in part on *Wexler* v. *Schiff* (149 Misc. 834). But there, as indicated by the dissenting opinion, the decision of the Appellate Term was, it seems, due to an amendment to section 2 of the Lien Law, which did not go into effect until July 1, 1932, long after the transactions involved in this case.

On behalf of plaintiff it is said that the advances from defendant making up the $7,000 were " mere loans." By that it is meant that defendant put no " limitation " " upon the disposition of the proceeds " and " that no check or inquiry was made to ascertain whether or not, in fact, the moneys were actually used by the builder in connection with the construction of the four dwelling houses." Presumably, plaintiff would argue that the actual use of the $7,000 in construction is immaterial. If defendant had one of its office staff pay the $7,000 to contractors for the labor and material, then possibly counsel for plaintiff might concede that the funds went into " cost of improvement." But if defendant relied on the owner-builder to do the same thing, defendant made a fatal mistake, according to the argument for plaintiff, even though the $7,000 was obtained from defendant on an informal promise that it would be paid to contractors for labor and material and even though that promise was fully performed.

The statutes which have been enacted for the protection of those furnishing labor and material toward the improvement of real property are " to be construed liberally to secure the beneficial interests and purposes thereof." (Lien Law, § 23.) With justice to persons who are not laborers, materialmen, contractors, or the like, the result sought by plaintiff can hardly be classified as within the " beneficial interests and purposes " contemplated. Some degree of rigidity may have been intended, to cure well-known evils. But the friends of the laws enacted to meet such practices might wisely refrain from advocating rigidity, in interpretation and application, such as will bar out common sense and as will unnecessarily result in injustice to those whose funds may be honestly used to pay for labor and material.

From what is conceded, solely for the purposes of this motion, it seems that defendant, in effect, paid " cost of improvement " to the extent of the $7,000. In no true sense was there a diversion of trust funds if the $7,000 was intended to be used and was honestly used in constructing the dwellings. Plaintiff was not injured if the $7,000 was so used; for then the amount called for in the building loan contract, for use in construction, was not diminished. If the full amount contemplated by the building loan contract went into the operation, the complaint here would seem to relate to a matter of form in no way prejudicial to plaintiff. It does not seem to be the intent of the statute to penalize a person who puts his money into the construction of the improvement. Plaintiff's interpretation would appear to be too strict; and contrary to the spirit of the Lien Law. If the $7,000 was used in construction, it would seem to be the effect of the argument for plaintiff that the statute was

intended to inflict an unjust penalty in order that those furnishing labor or material might have, *pro tanto*, double benefit. The end sought by plaintiff seems to be that the amount available for construction, pursuant to the building loan agreement, be increased to the extent of defendant's $7,000. Under the concession it would appear that, if plaintiff's assignor relied for payment on the amount to be available out of the building loan, he could not, in that connection, have been prejudiced as a result of what is alleged in the complaint. If the amount properly going into the improvement equals the amount which according to the building loan should go into the improvement, there is no diversion, under circumstances such as seem to obtain here.

Plaintiff's position in this case appears to be that plaintiff's assignor, when he furnished labor and material, relied upon the fact that there was a building loan; and it is one of the purposes of the Lien Law to afford protection to those who look to a building loan as assuring them that they will be paid for labor and material to be furnished. But the papers on this motion are not convincing as to when labor or material was furnished by plaintiff's assignor. The evidence presented does not disclose to what extent the claim is for labor or material supplied after the time when the building loan agreement went into effect. In an affidavit verified by the attorney for plaintiff it is set forth that construction could not have begun prior to December 15, 1930, the day on which the owner-builder contracted to purchase the land, and that it is " probable that work was commenced at a later date." Plaintiff's assignor avers that he commenced work in December, 1930, and completed the last item of work on October 10, 1931.

From the foregoing it will be seen that it is not shown how much of the claim assigned to plaintiff is for work or material furnished subsequent to the time when the building loan went into effect. Prior to said time he may have furnished part, even most, of that for which payment is now sought.

It will be noted that more latitude is given to an owner under section 36 than to one whose status is solely that of contractor under section 36-a. Similarly, it will be noted that this case does not come under section 25-a.

In *Fogarty* v. *City of Albany* (157 Misc. 30) the $730.43 " was applied upon a prior indebtedness of [the contractor]." Obviously it was diverted from the job. It did not go into construction.

In *Wexler* v. *Schiff* (149 Misc. 834) the briefs show the respondent contended that the defendant there was to be charged with a diversion amounting to more than enough to pay all who could make claim under section 36 of the Lien Law. The Appellate Term may

have proceeded on such a finding. Here the point is not discussed, but it probably would be contended for plaintiff that he is not called on to show whether or not there are other claimants similarly situated. Evidently it would be suggested for plaintiff that he has been diligent and that he should have his claim satisfied whether or not there be anything left for others with claims equally as good. That suggestion might lead to unfair results. One example will suffice. The first contractor to bring action might, because of the amount of his claim, have to go to the Supreme Court. A contractor subsequently commencing action might, in another court, be the first to obtain judgment. Though perhaps less diligent, he could take the entire amount available on the trust fund theory. Going more to fundamentals, it may be observed that, while this action is at law, it is ultimately based on the Lien Law. Moreover, an action for money had and received is an appeal for justice, and a " trust fund " doctrine suggests equitable results. Equality is equity. It would appear that the provisions of section 36 of the Lien Law are intended for the protection of all those it seeks to protect and not solely for the benefit of the speediest or those most favored by fortuitous circumstance.

Plaintiff's motion for summary judgment is denied.