RAYMOND CONCRETE PILE COMPANY, Respondent, *v.* FEDERATION BANK AND TRUST COMPANY, Appellant.

Argued April 30, 1942; decided July 29, 1942.

*John W. Davis, Morris Buchter, Sidney Abrams, Harold M. Hoffman* and *Laurence Eliot Bunker* for appellant. Even if all the proceeds of the check are held to be trust funds for the benefit of all " subcontractors, architects, engineers, surveyors, laborers and materialmen," whether lienors or not, the bank is not liable since it was neither an actual nor a constructive trustee. (*American Laundry Machinery Co.* v. *Union Trust Co.*, 153 Misc. Rep. 55; *Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Clarke* v. *Public Nat. Bank & Trust Co.*, 259 N. Y. 285; *Barclay* v. *Corn Exchange Bank Trust Co.*, 155 Misc. Rep. 684; 243 App. Div. 692; 267 N. Y. 630; *Vulcan Rail & Constr. Co.* v. *County of Westchester*, 250 App. Div. 212; *Bonham* v. *Coe*, 249 App. Div. 428; 276 N. Y. 540; *American Lumberman's Mut. Cas. Co.* v. *Bradley Constr. Co.*, 127 N. J. Eq. 500.) Plaintiff is not a beneficiary of the trust created by section 25a of the Lien Law (Cons. Laws, ch. 33) and cannot maintain the action. (*Holy Trinity Church* v. *United States*, 143 U. S. 457; *Edison Electric Illuminating Co.* v. *Frick Co.*, 221 N. Y. 1; *Hitchings* v. *City of New York*, 182 App. Div. 28; *Grutzner* v. *Howard*,

167 Misc. Rep. 540; *Mack* v. *Colleran*, 136 N. Y. 617; *Amiesite Constr. Corp.* v. *Luciano Contr. & Bldg. Co.*, 284 N. Y. 223; *O' Neill* v. *Seglin Constr. Co.*, 158 Misc. Rep. 742; 248 App. Div. 684; 273 N. Y. 549; *New York Trap Rock Corp.* v. *National Bank of Far Rockaway*, 260 App. Div. 1035.) The funds the plaintiff seeks to reach were not trust funds even in the hands of the contractor corporation. (*Williamson & Adams, Inc.*, v. *McMahon-McEntegart, Inc.*, 256 App. Div. 313; *Giersch* v. *Grady*, 85 Conn. 685; *Trustees of M. E. Church* v. *Trustees of Jackson Sq. Church*, 84 Md. 173; *Meyers* v. *New York County Nat. Bank*, 36 App. Div. 482; *Delano* v. *Equitable Trust Co.*, 110 Misc. Rep. 704; *Commercial Savings Bank* v. *Mann*, 206 App. Div. 297; 238 N. Y. 559; *Hinds Co.* v. *Common School District No. 3*, 242 App. Div. 158.) Such funds are " trust " funds only in the hands of the contractor. (*American Laundry Machinery Co.* v. *Union Trust Co.*, 153 Misc. Rep. 55; *Sexauer & Lemke* v. *Burke & Sons Co.*, 228 N. Y. 341; *Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Clarke* v. *Public Nat. Bank & Trust Co.*, 259 N. Y. 285.)

*Horace R. Lamb* for respondent. Plaintiff having proved that the defendant had knowledge that the proceeds of the city's check was a trust fund and that a portion of the trust fund was diverted to defendant, plaintiff is entitled to a decree impressing the diverted fund with a constructive trust. (*Fogarty* v. *City of Albany*, 157 Misc. Rep. 30; *Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Grace* v. *Corn Exchange Bank Trust Co.*, 287 N. Y. 94; *Van Alen* v. *American National Bank*, 52 N. Y. 1; *Roca* v. *Byrne*, 145 N. Y. 182; *National Bank* v. *Insurance Co.*, 104 U. S. 54; *Union Stock Yards Bank* v. *Gillespie*, 137 U. S. 411; *Fidelity & Deposit Co.* v. *Queens County Trust Co.*, 226 N. Y. 225; *Allen* v. *Puritan Trust Co.*, 211 Mass. 409.) Plaintiff as an unpaid beneficiary of the trust may maintain a representative suit on behalf of all beneficiaries of the trust without alleging or proving that it filed notice of lien for its claim or that it had recovered a judgment against the contractor for the amount of its claim. (*Martin* v. *Home Bank*, 160 N. Y. 190; *Persky* v. *Bank of America Nat. Assn.*, 261 N. Y. 212; *Wickes Boiler Co.* v. *Godfrey-Keeler Co.*, 121 Fed. Rep. [2d] 415; *Edison Electric Illuminating Co.* v. *Frick Co.*, 221

N. Y. 1; *Clapper* v. *Strong*, 90 App. Div. 536; *Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Grace* v. *Corn Exchange Bank Trust Co.*, 287 N. Y. 94.) The duties imposed upon the defendant bank in respect of the trust under section 25-a do not constitute an undue or improper burden; on the contrary, the defendant's conduct unfairly burdens beneficiaries of the trust and subjects the contractor and its officers to possible criminal liability. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106.)

RIPPEY, J. On July 7, 1939, plaintiff commenced this action in equity, on its own behalf and on behalf of those similarly situated who might elect to come in and share the burdens of the action, against the defendant bank to impress a trust under section 25-a of the Lien Law (Cons. Laws, ch. 33) upon moneys received on February 17, 1939, by a contractor for a public improvement, deposited in its general checking account in the defendant bank and applied by the bank on February 20, 1939, in payment of an indebtedness of the contractor to the bank, and to recover the alleged diversion of the fund. At the close of the trial the complaint was dismissed. The Appellate Division reversed the judgment entered upon the decision of the Special Term and granted judgment for the plaintiff. At the close of the plaintiff's case the defendant rested and introduced no evidence. Upon the testimony introduced by the plaintiff it may be deemed that the following facts were established.

Prior to October 15, 1938, L. P. O'Connor, Inc., entered into a contract with the city of New York for the foundation work, including excavation, for the new Criminal Courts Building for approximately one and three-quarters million dollars. The bank then knew that the contractor would be required to purchase materials but did not know that it would employ sub-contractors. The contractor had an ordinary general deposit account in the defendant bank which originated in December, 1937. The contract called for payment by the city from time to time upon warrants and certificates as the work progressed, such payments usually being made between the fifteenth and twentieth of each month. From time to time between the intervals of such payments by the city during the progress of the work under the contract, the contractor borrowed money from the defendant for the purpose of aiding it

in its performance of the contract, which borrowings were evidenced by promissory notes the proceeds of which were deposited in the contractor's account and used by the contractor for the purposes of the contract. It was the agreement between the contractor and the bank that such interim advances should be paid out of moneys as and when received from the city. Among such deposits were the proceeds of six certain promissory notes, made subsequent to the January payment by the city, aggregating $72,500, and severally maturing between February 20, 1939, and March 20, 1939. On February 16, 1939, the contractor had overdrawn its account and was told by an officer of the bank that it must make the overdraft good, whereupon the contractor suggested and the defendant bank agreed to the suggestion that the former execute and deliver to the defendant a new promissory note, dated February 17, 1939, payable upon demand to the order of the defendant in the principal sum of $78,000, the proceeds of which were to be deposited in the contractor's account in liquidation of the note obligation and overdraft indebtedness and that the demand note should be paid out of the proceeds of a payment from the city on account of the contract which was shortly to be made. Accordingly, the demand note was executed and delivered to the bank and credited to the contractor's account at the opening of business on the morning of February 17, 1939, in payment of the six promissory notes and the overdraft and the bank returned these notes to the contractor.

On February 17, 1939, the city of New York executed and delivered its warrant and order to the contractor on the Chase National Bank on account of the aforesaid contract in the sum of $178,088.38, the amount of the estimate for the work done and materials furnished under the contract in January, 1939. The warrant and order or check were endorsed by the contractor for deposit and deposited in its account with the defendant and collected by the defendant through the clearing house on the same day. The defendant knew that the check so deposited represented a payment by the city upon the construction contract. On Monday morning, February 20, in accordance with its agreement with the contractor, defendant offset the contractor's obligation of $78,000 represented by the demand note against the contractor's credit balance in its account. Between February 17

and February 23 the contractor drew various checks upon its account which were paid by the bank in regular course but to whom and for what purposes does not appear and none of the recipients are parties defendant in this action. During that period the contractor made no deposits other than the check from the city with the defendant bank and all of those checks, plus the demand note, were paid out of the proceeds from the city's check. When the defendant made its offset there was a credit balance in the contractor's account of $139,106.68. The contract with the city was not completed until after February, 1939, and the foregoing payment by the city was not a final payment under the contract.

L. P. O'Connor, Inc., subcontracted a part of the work to the plaintiff in this action. On January 31, 1939, there was due the plaintiff from the contractor for work done and materials furnished under the subcontract for the month of January, 1939, at least $80,344.54. On February 22, 1939, the contractor delivered to the plaintiff its check, dated February 21, 1939, on the defendant bank, payable to the order of the plaintiff in that amount. At the opening of business on February 23, 1939, plaintiff presented that check to the defendant bank for certification but certification by defendant was refused on the ground that there were then insufficient funds of the maker on deposit in the bank with which to pay the check.

Section 25-a of the Lien Law upon which the plaintiff relies for recovery reads as follows: " The funds received by a contractor for a public improvement are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement, and to the payment of premiums on surety bond or bonds filed and premiums on insurance accruing during the making of the improvement and any contractor and any officer, director or agent of any contractor who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny and punishable as provided in section thirteen hundred and two of the penal law."

Plaintiff took the position at the trial and has successfully maintained the position in the court below that the moneys received

by the contractor from the city and placed in its personal depository account at the bank constituted in fact and in law a true trust fund under section 25-a of the Lien Law and necessarily known by the bank to be such; that the bank was estopped to deny knowledge that its application of $78,000 thereof to the payment of the contractor's demand note was a diversion of the fund; that, having received a benefit from the diversion, the bank is chargeable with knowledge of any facts that might have been discovered by reasonable inquiry; and that, irrespective of any denial of actual knowledge, since the bank benefited by the diversion, it is subject to the requirements of the law to restore to the trust the funds which it received for its personal benefit. There is no evidence in the case whether or not the bank made any inquiry to determine if there were in existence any beneficiaries of the fund when the offset was made.

It may be stated as a general rule that a banker who knows that a fund on deposit with him is a trust fund cannot appropriate that fund for his private benefit (*Allen* v. *Puritan Trust Co.*, 211 Mass. 409, 422), nor can a bank be privy to a diversion of such a fund, though disinterested in it, and be absolved from liability for the loss (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106, 112; *Grace* v. *Corn Exchange Bank Trust Co.*, 287 N. Y. 94, 100). Many cases on varying facts might be cited as authority for those propositions. But one who relies upon the application of those principles must always affirmatively establish that the bank had notice or knowledge not only that the moneys on deposit were for a trust purpose but also that they were diverted from that purpose (*Clarke* v. *Public Nat. Bank & Trust Co.*, 259 N. Y. 285; *American Lumberman's Mutual Casualty Co.* v. *Bradley Construction Co.*, 129 N. J. Eq. 278).

From the facts in this case no trust or fiduciary relationship between the contractor and his sub-contractor arose or existed under the common law. If plaintiff may succeed on the pleadings and the proof as presented, it must be found that the Legislature intended by the enactment of section 25-a to create a trust relationship which would give rise to a cause of action in behalf of the sub-contractor which he would not otherwise have under the common law or under any other provision of the Lien Law or under

any other statutory provision. The most that the statute does or was designed to do in that respect is to create the possibility of a fiduciary relationship arising between the contractor as to funds coming into his hands from a public improvement contract and a possible sub-contractor or possibly others designated. The statute does not give rise to a fiduciary relationship between a contractor and his sub-contractor or, if once created, continue it under any and all contingencies. Whether the moneys in the hands of the contractor are or may be the subject-matter of a trust depends exclusively upon the fact, arising, existing and shifting according to time and circumstance, that the contractor fails to pay the claims mentioned in the section. Nothing in the section bars the contractor from using the moneys received for any purpose he may see fit provided he does not fail to pay all such claims out of other moneys which he may then have or which he may afterwards receive; and nothing in the section bars a banker from applying moneys, if on deposit in the contractor's account at the bank, without inquiry, upon the contractor's indebtedness to the bank. It necessarily follows that no trust arises under that section from the mere fact that the contractor received and has in his hands moneys in payment on account of a public improvement.

There is no evidence in the case to indicate that the defendant knew or had any reasonable grounds to suspect prior to February 23, 1939, either that the plaintiff was a sub-contractor in connection with such improvement work or that it had any claim at any time for work, labor and services performed or materials furnished in connection therewith or that any other person referred to in section 25-a of the Lien Law had any such claim. Without such evidence, there was no basis in the record for the judgment requiring defendant to return the moneys which it received in payment of the obligation of the contractor (*Clarke* v. *Public Nat. Bank & Trust Co., supra*). When the deposit was made in the contractor's personal account, a presumption arose, upon which the defendant was entitled to rely, that the fund was not a trust fund and that there was no beneficiary entitled to any portion thereof and that presumption continued until annulled by knowledge or adequate notice to the contrary. There is neither evidence nor finding by the court or claim by plaintiff of bad faith on the part of the bank in

making the offset. In the circumstances disclosed by the record as above indicated, upon the agreement, based on adequate consideration, that it might satisfy the indebtedness of the contractor out of the specific moneys coming from the city, the bank had the right to make the offset without inquiry and an undisclosed beneficiary mentioned in section 25-a of the Lien Law could not recover from the bank whether or not the bank had changed its position by the operation (*Hatch* v. *Fourth Nat. Bank*, 147 N. Y. 184; *Barclay* v. *Corn Exchange Bank Trust Co.*, 267 N. Y. 630).

A reason, other than lack of evidence, bars successful maintenance of this action. The origin, legislative history, wording and character of section 25-a of the Lien Law, when construed with other provisions of law relating to the same subject-matter, indicate that the Legislature had no intent or purpose to create a new civil remedy. By section 2 of chapter 515 of the Laws of 1929, section 36 was added to the Lien Law and provided that an " owner may not divert funds " received by him under advances made pursuant to a building loan contract and secured by a building loan mortgage from payment for the cost of the improvement, and " any owner and any officer, director or agent of any owner who before all liens are paid or discharged applies or consents to the application of such funds for any purpose except to paying the cost of improvement is guilty of a misdemeanor." That section was amended in 1930 (L. 1930, ch. 859, § 17). The title was changed to read " Owner who diverts funds guilty of larceny." The section was made further applicable to funds advanced to an owner under a mortgage and application of such funds for any purpose other than paying for the cost of the improvement prior to the paying of such cost made the owner " guilty of larceny and punishable as provided in section thirteen hundred and two of the penal law." The section was also amended in 1932 (L. 1932, ch. 627, § 9). The amendment added these words, " and by an owner under every instrument of conveyance containing the covenant required by subdivision five of section thirteen of this chapter." In 1930 the Legislature added two new sections to the Lien Law, sections 36-a and 36-b (L. 1930, ch. 859, § 18). Section 36-a provided that the funds received by a contractor from an owner for the improvement of real property " are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of sub-

contractors, architects, engineers, surveyors, laborers and material-men arising out of the improvement, and to the payment of premiums on surety bond or bonds filed and premiums on insurance accruing during the making of the improvement and any contractor and any officer, director or agent of any contractor who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny and punishable as provided in section thirteen hundred and two of the penal law." Section 36-b, as amended by chapter 696 of the Laws of 1933, limits the funds received by a sub-contractor from an owner or contractor or subcontractor for the improvement of real property to payment of the claims of sub-contractors, laborers or materialmen only but otherwise is in the identical wording of section 36-a. The Legislature added new subdivision " (6) " to section 25 of the Lien Law in 1930 (L. 1930, ch. 859, § 15), in its present form. That amendment, except as it is limited to funds received by the contractor for advances pursuant to an assignment of moneys and does not relate to advances or payments covered by the foregoing sections, is in the identical words of those sections. Sections 25-a and 25-b were added as new sections to the Lien Law in 1932 (L. 1932, ch. 627, § 8). The first provides that a contractor on public improvements who diverts funds is guilty of larceny and the second that a sub-contractor is similarly guilty, the first section being in the identical wording of section 36-a and the second of 36-b except that both are specifically made applicable to moneys received from contracts on public improvements. The last two sections were probably added to the Lien Law since some question had arisen as to whether or not sections 36-a and 36-b related to moneys received from both public and private improvements or only to moneys received from private improvements.

All of the foregoing sections have exactly the same purpose which is declared in the title of the several acts in substantially the same words and in identical words in the bodies of all sections. It is plainly pointed out in all of them that the purpose and intent of the Legislature was to add a contractor or a sub-contractor, who had used moneys received by him from public or private improvements or an owner who had received moneys for the pur-

pose of a private improvement without paying existing claims of persons mentioned in those sections to the class of persons against whom penalties are provided in section 1302 of the Penal Law. All sections were directed against and made applicable only to owners, contractors or sub-contractors with designated funds in their hands. Those sections of the Lien Law and section 1302 of the Penal Law must be read and construed together. Section 1302 gives a measure of protection against a fiduciary who converts property held in trust and, by virtue of those sections of the Lien Law, some protection to persons mentioned in those sections who have not seen fit to take advantage of other provisions of the Lien Law or of other remedies which they might have invoked. Beyond the penalty imposed for the commission of the crime of larceny, it provides for the imposition of a fine " not exceeding the value of the property so misappropriated or stolen, with interest thereon from the time of the misappropriation, withholding, or concealment, and twenty per centum thereupon, in addition, and to be imprisoned for not more than five years in addition to the term of his sentence for larceny, according to this article, unless the fine is sooner paid," and directs that so much of such fine, as and when collected, as amounts to the amount or value of the property taken, appropriated, or stolen with interest from the time of the commission of the offense plus a reasonable sum to defray the expense of collecting the same shall be paid over to the person injured or defrauded. The purpose of the sections as may readily be seen is solely penal and not to provide civil remedies. Civil remedies are adequately provided by other sections of the Lien Law or by the common law. A contractor or a subcontractor or an owner included within the provisions of those sections was not included within the class of persons punishable under section 1302 of the Penal Law until he was made so by those sections of the Lien Law. In clear terms those sections were not intended to create a real trust fund to remain such under any and all contingencies from the time the contractor or sub-contractor first received payment on account of public or private improvements respectively. Those sections create no new causes of action. Every one of the persons mentioned for whose protection the sections are claimed to have been enacted may sue the contractor or the sub-contractor or the owner, as the

case may be, as though the sections had never been enacted. No intent is found to create two concurrent remedies, one civil and the other penal under section 1302, for the same wrong. The intent to create one remedy under section 1302 is clear.

In the only case in which the question was reached in this court we held that an individual claimant could not maintain an action under section 25-a (*New York Trap Rock Corp.* v. *National Bank of Far Rockaway*, 285 N. Y. 825). We must now conclude that no civil representative action is created by that section and that it does nothing more than to bring an offender under that section within the coverage of section 1302 of the Penal Law. The intent and purpose of the Legislature as to its scope seems reasonably clear. The section being highly penal must be strictly construed (*People* v. *Benc*, 288 N. Y. 318). Though section 23 requires a liberal construction of the provisions of the Lien Law, it does not authorize judicial amendment so as to enlarge its clearly defined scope and purpose (*Spruck* v. *McRoberts*, 139 N. Y. 193, 197; *Sexauer & Lemke* v. *Burke & Sons Co.*, 228 N. Y. 341, 345).

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

LEHMAN, Ch. J., LOUGHRAN, FINCH, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgment accordingly.