**GRAMATAN–SULLIVAN, Inc.,**
Plaintiff,

v.

**Nathan KOSLOW,** individually and as principal of an unincorporated entity or assumed name doing business as "C.N.K. Co.," Defendant.

United States District Court
S. D. New York.
March 29, 1956.

Prime Bros. & Duffy, Yonkers, N. Y., for plaintiff, Francis J. Duffy, Yonkers, N. Y., of counsel.

Benjamin Jaffe, New York City, for defendant.

PALMIERI, District Judge.

The plaintiff, a supplier of building materials, seeks to recover part of a debt of $33,421.89 concededly owed to it by a building contractor, A. Shaw & Co., Inc. (Shaw). It brings this action to impress a trust on funds paid to the defendant Koslow by Shaw in liquidation of a money debt. The action is brought under §§ 36–a and 71 of the New York Lien Law, McK.Consol.Laws, c. 33. Jurisdiction is founded upon diversity of citizenship.[1]

Sections 36–a and 71 of the Lien Law provide as follows:

"The funds received by a contractor from an owner for the improvement of real property are hereby declared to constitute trust funds in the hands of such contractor to be applied first to the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement, * * * and any contractor and any officer, director or agent of any contractor who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny

---

1. The plaintiff is a corporation incorporated under the laws of the State of New York. Koslow is a resident of New Jersey. The complaint as originally framed named both Koslow and Shaw as defendants. Shaw, however, is a New York corporation. To cure the resultant lack of diversity jurisdiction, the plaintiff moved at the outset of the trial to amend the complaint, discontinuing the action against A. Shaw & Co., Inc. and striking allegations that the latter was an indispensable party. [For reasons stated at the conclusion of this opinion, these motions are deemed to be granted.]

* * *. Such trust may be enforced by civil action maintained as provided in article three-a of this chapter by any person entitled to share in the fund, whether or not he shall have filed, or had the right to file, a notice of lien or shall have recovered a judgment for a claim arising out of the improvement. For the purpose of a civil action only, the trust funds shall include the right of action upon an obligation for moneys due or to become due to a contractor, as well as moneys actually received by him." Lien Law, § 36–a, as amended L.1942, c. 808, § 4, eff. Sept. 1, 1942.

"A trust described in section * * * thirty-six-a * * * of article two of this chapter may be enforced by any person entitled to share in the trust fund in a representative action brought for the benefit of all persons entitled to share in the fund." Lien Law, § 71, added, L.1942, c. 808, § 15, eff. Sept. 1, 1942.

It was established at the trial that Villa-Manor Realty Co., Inc., (Villa Manor) owner of the realty improvement, paid two installments on its contract with Shaw at the end of May and the beginning of June, 1954. Both payments were by check. The first, dated May 28th, was for $3,000. The second, dated June 4th, was for $8,900. Both checks were endorsed over by Shaw, the contractor, directly to defendant Koslow on the dates drawn. Koslow deposited them in his bank account on the same dates.

The total of the two checks, $11,900, is the amount sued for in this action. Plaintiff contends that at the time of the indorsement over, the checks were held by Shaw in trust for its benefit.[2] Thus it maintains that Koslow is liable for the return of trust funds improperly diverted.

As of May 28th, however, the date of Shaw's first payment to Koslow, there were no job claims outstanding against the contractor. Gramatan-Sullivan had neither made nor contracted for any deliveries to Shaw. On June 1st, 2nd and 3rd, the plaintiff delivered sand and mortar to Shaw at a total price of $321.60. This was the only job debt proved to have been incurred by Shaw prior to June 4th, the date of the contractor's second payment to Koslow. At no time had Shaw and the plaintiff entered into a contract for future deliveries. Nor did the course of business between them reflect a formal contractual relationship. Plaintiff's delivery invoices show a number of deliveries between June 4th and August 25th totaling $33,429.81. These invoices bear the legend: "Terms: 2% —10 days, 30 Net."

From the facts shown, it is apparent that the plaintiff seeks, as to the first check, to impress a trust upon funds received and paid out by Shaw at a time when there were no job claims outstanding against the contractor. As to the second check, it asserts a trust in excess of claims outstanding against the contractor at the time of the alleged diversion.

█ Thus, the main question in the case is whether § 36–a creates a trust for the benefit of all potential job claimants or whether, on the contrary, the trust arises only to the extent of unsatisfied, outstanding claims. For reasons stated more fully hereafter, it is held that the statutory trust arises only in the event that there are unpaid claims outstanding and only to the extent of such claims.

The plaintiff may recover nothing in excess of the $321.60 representing the goods delivered prior to Shaw's second payment to Koslow. As to that sum, the evidence established that Shaw's payment to Koslow was a diversion of trust funds concerning which the defendant Koslow had constructive notice. To that

---

2. There is no question that the plaintiff fell within the class of "subcontractors, architects, engineers, * * *" etc., described in the statute as beneficiaries of any trust which might arise. For the sake of convenience, this group will be referred to, where necessary, as "job claimants."

extent, therefore, plaintiff's claim to recovery against Koslow is granted. Discussion of the bases for these determinations, as well as of the grounds for sustaining the Court's jurisdiction, follows.

The scope of the limitations imposed by § 36–a on a contractor's freedom to dispose of funds due or received from an owner has not been precisely delineated by the New York Courts. But the nature of the trust was defined by the New York Court of Appeals in Raymond Concrete Pile Co. v. Federation Bank & Trust Co., 1942, 288 N.Y. 452, 43 N.E.2d 486. The Court there stated:

"The statute does not give rise to a fiduciary relationship between a contractor and his subcontractor or, if once created, continue it under any and all contingencies. Whether the moneys in the hands of the contractor are or may be the subject-matter of a trust depends exclusively upon the fact, arising, existing and shifting according to time and circumstance, that the contractor fails to pay the claims mentioned in the section. Nothing in the section bars [their use] for any purpose [the contractor] may see fit provided he does not fail to pay all such claims out of other moneys which he may then have or which he may afterwards receive * * * no trust arises * * * from the mere fact that the contractor received and has in his hands moneys in payment on account of a[n] * * * improvement." Supra, 288 N.Y. at page 459, 43 N.E.2d at page 489.

An earlier opinion, by the Appellate Division, reflects a similar interpretation of the statute. Suit had been brought by a job claimant against a bank to recover the amount of checks received by a contractor on account of an im-

provement and deposited in its bank account. The bank had applied the money deposited to satisfy the contractor's debts to it. The Court denied recovery on the ground that the bank had had no knowledge, at the time of deposit, that there were any job claims outstanding against the contractor. Vulcan Rail & Construction Co. v. Westchester County, 2d Dept.1937, 250 App.Div. 212, 293 N.Y. S. 945.

The clear import of these cases is that no trust arises under § 36–a of the Lien Law in the absence of unpaid claims outstanding against the contractor. This analysis accords with the construction of a similar statute by the Supreme Court of Wisconsin. Danischefsky v. Klein-Watson Co., 1932, 209 Wis. 210, 244 N.W. 772.[3] The Wisconsin Court held that in the absence of any outstanding unpaid job claims, the fund had, in the hands of the contractor, the same status it would have had if the trust fund provision had not been enacted. Therefore, county orders on the job were attachable by the contractor's other creditors.

The main challenge to this interpretation of the statute is plaintiff's contention that the effect of the Raymond case was abrogated by subsequent amendment of § 36–a. The statute was amended in 1942. L.1942, c. 808, §§ 4, 15. The amendments grew out of a conflict of opinion concerning the availability of a civil remedy to enforce the trust. This conflict had been brought to a head by the holding of the Court of Appeals in Raymond that the trust created by the statute could not be civilly enforced. Raymond Concrete Pile Co. v. Federation Bank & Trust Co., supra, 288 N.Y. at page 461, 43 N.E.2d at page 490. Compare Century Indemnity Co. v. Bank of Gowanda, Sup.1941, 35 N.Y.S.2d 396, af-

3. See Wis.Stat.Ann.1953, § 289.02(4), as amended, 1955. Other states have enacted comparable statutes. See, e. g., Ark. Stat.Ann.1947, § 51–601; 6 Del.Code Ann. §§ 3502, 3503; Fla.Stat.Ann. § 84.07(3); Ky.Stat.Ann., Baldwin's 1955 Revision, §§ 376.070, 376.990; Mich.Stat.Ann.1953, §§ 26.331–333; Minn.Stat.Ann. § 514.02b; Rev.Stat.Neb.1943, § 52–119; N.J.Stat. Ann. 2A:44–147; No.Car.Gen.Stat. § 44–12, Recompiled 1950; Michie Code of Va. § 43–13, 1953 Replacement; Williams Tenn.Code Ann.1934, §§ 7944a, 7945; Rev.Code Wash.1951, § 9.54.080. But the Danischefsky opinion is the clearest holding found on the subject.

firmed, 4th Dept., 263 App.Div. 1068, 35 N.Y.S.2d 463, appeal denied 264 App.Div. 834, 36 N.Y.S.2d 417, reargument denied 1942, 264 App.Div. 986, 37 N.Y.S.2d 493, and 265 App.Div. 907, 38 N.Y.S.2d 318; Bray Bros., Inc., v. Marine Trust Co. of Buffalo, Sup.1937, 35 N.Y.S.2d 356. Also in question was the right of claimants without liens or judgments to pursue the remedy under § 36–a if it were available. See Wickes Boiler Co., Inc., v. Godfrey-Keeler Co., Inc., 2 Cir., 1940, 116 F.2d 842, reversed on rehearing, 2 Cir., 121 F.2d 415, certiorari denied 1941, 314 U.S. 686, 62 S.Ct. 297, 86 L.Ed. 549. The amendment added the provision for civil enforcement in representative actions by all claimants similarly situated whether or not they had judgments or liens. The earlier language construed by the Court of Appeals was left intact.

The language of the amendment thus evidences no intent to do more than set at rest the controversy expressly recognized in the Raymond case. That opinion had already suggested that the contractor's freedom to deal with his receipts was fettered by the statutory trust provisions of § 36–a only so long as there were existing claimants. The Legislature had not intended, the Court said, "to create a real trust fund to remain such under any and all contingencies from the time the contractor or subcontractor first received payment on account of public or private improvements * * *." Raymond Concrete Pile Co. v. Federation Bank & Trust Co., supra, 288 N.Y. at page 462, 43 N.E.2d at page 491. It is reasonable to assume, therefore, that had the Legislature wished further to constrict the contractor's freedom of action, it would have made this intention explicit in the statute. In view of the fact that the architecture of the trust created by § 36–a remains unchanged by statutory amendment, the holding of the Raymond case must be regarded as controlling.

The plaintiff has, nevertheless, urged that there is evidence in support of its more sweeping definition of the trust. The Raymond opinion intimates that the Court's denial of a civil remedy under § 36–a was based upon its analysis of the nature of the trust. The Court implied that a trust so chameleon-like in character could never lend itself to civil enforcement. And enforcement by the representative action prescribed by the statute of a trust so defined might present difficulties not yet touched upon by the New York courts. Whether, for example, creditors whose claims had arisen after a diversion would be entitled to share equally, upon the contractor's insolvency, in any funds recovered, is problematical. To permit all claimants to share in a trust which had arisen for the benefit of only some of them would be anomalous; and to distinguish among creditors of an insolvent solely upon the basis of the dates when their claims arose would permit fortuitous circumstances to prevail over comparable equities.

A contemporaneous expression of the New York Law Revision Commission is of interest in this connection. Conceding that there was no guiding case law, the Commission expressed the opinion that "even if no * * * claimant existed at the moment of receipt of the moneys by the contractor (or other trustee * * *) a trust would arise in favor of future claimants." Report, New York State Law Revision Comm'n, Leg. Doc. #65, p. 326 (1942). This report, which was begun prior to the Court of Appeals' decision in Raymond, suggests that had that case been decided earlier, additional changes in the statute might have been made. But the report does not elaborate on this proposed construction of the trust provision nor suggest its implications. The bare allusion cannot supply the evidence of intent lacking on the face of the statute.

A construction based upon the Raymond analysis would appear to effectuate the basic purpose of the Lien Law. The law is intended to assure that laborers and suppliers responsible for the improvement have first claim on the funds attributable to their efforts. Building contracts usually provide for payment in installments proportionate to

the estimated value of labor and materials supplied as of a given date. Retained percentage clauses permit the owner to preserve a proportion of the moneys for payments to claimants in case of the contractor's default.[4] Where such provisions are adhered to, the requirement that installments received be held in trust to pay outstanding claims should afford a large measure of security to job claimants. Provision for a continuing trust might afford the additional safeguards needed in situations where initial overbidding by contractors prevents full claim satisfaction out of the contract price.[5] But in the absence of indications that the New York courts have recognized such an obligation on the part of contractors, this Court must adhere to its interpretation of the views expressed in the Raymond case.

 This interpretation does not affect plaintiff's right to recover the $321.60 representing goods delivered prior to the payment to Koslow. Only to that extent, however, may plaintiff's claim against Shaw be enforced against Koslow. The fact that that claim was outstanding at the time of the second payment cannot create a trust in the balance of the funds received from Shaw by the defendant. Even the second payment was a diversion only to the extent that funds were withheld from those rightfully entitled to them at the time. And Koslow, as transferee, may be held liable for the return only of funds paid him in breach of this trust.

 Plaintiff's right to recover judgment for $321.60 depends upon whether Koslow took the payments from Shaw with actual or constructive notice that they represented a diversion of trust funds. Raymond Concrete Pile Co. v. Federation Bank & Trust Co., 1942, 288 N.Y. 452, 458–460, 43 N.E.2d 486; Bar-

clay v. Corn Exchange Bank Trust Co., 1935, 267 N.Y. 630, 196 N.E. 614. The law applicable to recovery of funds diverted under § 36–a is the general law on following trust funds into the hands of third parties. Century Indemnity Co. v. Bank of Gowanda, Sup.Ct. Erie County 1941, 35 N.Y.S.2d 396. In order to be held liable for the return of such funds, the transferee must have had notice not only that the funds were subject of a trust, but also that they were transferred in breach of the trustee's duty. Notice of a diversion under § 36–a as interpreted here implies notice of the existence of outstanding claims. Raymond Concrete Pile Co. v. Federation Bank & Trust Co., supra; Vulcan Rail & Construction Co. v. Westchester County, 2d Dept.1937, 250 App.Div. 212, 293 N.Y.S. 945, 953.

There is no doubt that Koslow knew that the checks paid him by Shaw were "funds received by a contractor * * * for the improvement of real property" within the terms of § 36–a. Drawn by Villa-Manor, the checks were identified on their voucher end as payments on account of the drawer's masonry contract with Shaw. Shaw's credible testimony at the trial, uncontroverted by Koslow, established the latter's familiarity with the contract and its terms.

Koslow may also be charged with notice of the diversion. There was no direct proof of actual knowledge. But he is chargeable with notice if the circumstances were such as to put him on inquiry. Bischoff v. Yorkville Bank, 1916, 218 N.Y. 106, at page 111, 112 N.E. 759, L.R.A.1916F, 1059; Bonham v. Coe, 4th Dept.1937, 249 App.Div. 428, 292 N.Y. S. 423, affirmed 276 N.Y. 540, 12 N.E.2d 566. And the facts within his knowledge at the time of the payment on June 4th, placed him under a duty of inquiry as to the existence of any outstanding un-

---

4. Shaw's contract with Villa-Manor adhered to this general practice. The agreement provided for mid-monthly payments of 95% of the value of labor, materials, etc., incorporated in the work prior to the end of the previous month, less the aggregate of previous payments.

5. That this problem inspired the passage of measures like § 36–a to supplement the general provisions for mechanics' liens, is indicated by the Report of the Law Revision Commission, Leg.Doc. #65, p. 298 ff. (1942).

paid claims against Shaw. The circumstances are distinguishable from situations in which courts have refused to recognize a duty to inquire. Koslow was not in the position of a bank, dealing at arms length with a borrower. See Raymond Concrete Pile Co. v. Federation Bank & Trust Co., supra; Clarke v. Public Nat. Bank & Trust Co. of New York, 1932, 259 N.Y. 285, 181 N.E. 574. His own testimony established a close and friendly relationship between him and Shaw which had grown out of previous dealings between them. On prior occasions, as in the present case, Koslow had given Shaw short-term loans at rates left entirely to the discretion of the lender. In the instant case, he extended credit of no more than $7,600 and as little as $4,600 for less than two weeks at a charge of $500.[6] The circumstances thus suggest a financial emergency of which Koslow could not have failed to take cognizance. Further inquiry should have followed as a matter of course. Recognition that such a duty might be unduly burdensome to banks or other large agencies cannot detract from the obligations of one who deals familiarly with a personal acquaintance. Nor can it seriously be maintained that such inquiry would have been to no avail. Merely by checking with persons working on the job Koslow could have identified Shaw's sources of supply and through them procured such information, if any, as might have been withheld by the contractor. Having failed to make such inquiries, he is chargeable with notice of the facts they would have disclosed.

Defendant raised an additional defense to plaintiff's claim for return of the trust funds. Koslow alleged that the money he loaned to Shaw had been applied by the contractor to the Villa-Manor payroll. And he maintained that since the moneys advanced by him were used for the Villa-Manor payroll (i. e., for "trust purposes"), he was entitled to be repaid notwithstanding unpaid job claims. This contention was unsupported by proof. Shaw was unable to say how much, if any of the money borrowed from Koslow had been applied to the Villa-Manor job. Nor had he any books or records showing the allocation of his receipts among his various jobs. Thus, in view of the failure of proof, it is unnecessary to rule on the defendant's contention.

■ Assuming arguendo, however, that proof were adduced, Shaw's use of the borrowed money to pay other job claimants would not, in my opinion, have been a legal defense to this action. Section 36–a impresses a trust for claimants of a designated class. The trust exists as long as any of such claimants are unpaid. Defendant was not a claimant of the class described. The fact that his loan had been used to satisfy some of such claimants could neither place him in their shoes nor give him preference over those still unpaid.

■ Protection for creditors in Koslow's alleged position is provided for elsewhere in the Lien Law. Section 13 (1–a) defines the rights of creditors advancing money for use on building jobs. Lien Law, § 13(1–a), as added, L.1942, c. 808, § 13. By taking and filing an assignment incorporating a trust covenant, the creditor may obtain a lien to the extent of moneys applied to the job. Koslow failed to avail himself of this source of protection. To permit him to prevail over the beneficiary of the trust fund would reward his neglect with preferment beyond that accorded for full compliance with the statute. Having eschewed the protection conferred, he may not claim a right reserved to others. See Century Indemnity Co. v. Bank of Gowanda, Sup.Ct. Erie County 1941, 35 N.Y.S.2d 396; contra, Bray Bros. v. Marine Trust Co., Sup.1937, 35 N.Y.S. 2d 356.

---

**6.** Shaw borrowed $7,600 on May 21st, $3,000 of which he repaid on the 28th. On June 3rd he borrowed an additional $2,800, but the whole debt was extinguished by his second payment to Koslow on the 4th. The additional $1,500 sued for represents the finance charge and $1,000 returned by Koslow in cash on the 4th.

648

Before concluding, however, it is necessary to allude briefly to the reasons why defendant's jurisdictional motions could not be sustained. The Court's jurisdiction hinged upon the conclusion that A. Shaw & Co., Inc. was not an indispensable party to this action. Unless Shaw was indispensable, the Court was authorized to grant the plaintiff's motion to sever the action against the contractor and proceed to the merits as between the plaintiff and Koslow. Wells v. Universal Pictures Co., 2 Cir., 1948, 166 F.2d 690.

Shaw would have been indispensable only had it had some interest in the subject of the action which might have been inequitably affected by the disposition of the case against Koslow. Here, having parted with the checks in suit, it stood to lose nothing by the determination in this case. It was not in the position of a trustee who, as legal titleholder or guardian of the rights of absent beneficiaries, retains an interest in the disposition of diverted funds. Cf. Backer v. Levy, 2 Cir., 1936, 82 F.2d 270; Cherry v. Howell, 2 Cir., 1933, 66 F.2d 713. While the contractor is a trustee under the terms of § 36-a of the Lien Law, enforcement of the beneficial interests is specifically entrusted to the cestui que trust. And protection of all claimants beneficially interested is assured by the statutory requirement of a representative action. Lien Law, §§ 36-a, 71. Thus, Shaw's position was analogous to that of a debtor in an action by his creditor to set aside a fraudulent conveyance. The debtor is not indispensable in such an action. Keene v. Hale-Halsell Co., 5 Cir., 1940, 118 F.2d 332; Keaton v. Little, 10 Cir., 1929, 34 F.2d 396; Allan v. Moline Plow Co., 8 Cir., 1926, 14 F.2d 912. Regardless of the outcome, he neither acquires nor loses any rights in the property conveyed. He cannot be prejudiced by a decree which subjects his former property to the payment of his debts. See, Allan v. Moline Plow Co., supra.

Defendant also argues that since diversion of funds by a contractor is punishable as larceny under § 36-a, a finding in the absence of the contractor and its officers that the funds in issue were diverted would be an unconscionable assault upon their reputations. Parties necessary under the Federal Rules, however, are parties jointly interested in the subject of the action. Fed.R. of Civ.P. 19, 28 U.S.C.A. As already indicated, no such interest exists here. Nor is it apparent that the determination in this action will have the unfortunate effects claimed. The contractor himself has evidenced no concern with the specter raised by defendant Koslow. He could have appeared, but he chose instead to default. Called to testify on Koslow's behalf, he appeared with his counsel and he proved to be a willing witness. Under the circumstances, there is no injustice in permitting the trial of this action without the presence of Shaw as a party.

Plaintiff is entitled to judgment against the defendant for $321.60.