Thomas P. Fablet, J.
Motion by defendant Dime Savings Bank for judgment dismissing the complaint or, in the alternative, for summary judgment and permission, pursuant to sections 285 and 286 of the Civil Practice Act, to deposit money into court. Plaintiffs cross-move for summary judgment.
This is a representative action for an accounting brought by subcontractors, materialmen and suppliers pursuant to article 3-A of the Lien Law (added by L. 1942, ch. 808) as it existed immediately before its comprehensive revision effective September 1, 1959. It is alleged in the complaint that plaintiffs were engaged to perform work, labor and services and supply the materials necessary to construct several hundred one-family dwellings in a development known as 1 ‘ Lakeside Village at Yorktown” located in the Town of Yorktown in Westchester County. The defendants Whitehall, Hunterbrook, Waltaire, 300 B. Mohansic, Cromer and Taconic owned the property; Ahneman-Christiansen was the contractor engaged by the afore-mentioned seven owner corporations to construct the houses on the property. These eight corporations are alleged to have been 11 fused ’ ’ and their ‘ ‘ identities merged ’ ’ into one joint venture under the direction and control of Ahneman-Christiansen, Inc. This is supported by a statement in the transcript of the deposition of the defendant Edward Ahneman, an officer of all the defendant corporations, wherein he acknowledged that the “ profits ” from the Lakeside Village development were “ to be divided up between the eight corporations in the most profitable way tax-wise. This was to be determined by the accountants after the amount of profit was determined ’ ’. Although this statement is not binding on the defendant Dime, its accuracy is accepted for the purposes of this motion.
*608 During the period extending from January, 1958 to October, 1958, the Dime entered into building loan agreements with defendants Whitehall, Huntcrbrook and Mohansic, pursuant to which it advanced funds, and in return received building loan notes and mortgages. The mortgages contained a covenant that the mortgagor would receive the advances as a trust fund to be applied first for the purpose of paying the cost of the improvements before using any part of the total of the same for other purposes. Plaintiffs assert that upwards of $800,000 was advanced by Dime to the building corporations pursuant to these building loan agreements, notes and mortgages, which advances were trust funds as defined by section 36 and subdivision (3) of section 13 of the Lien Law. However, insofar as defendant Dime is concerned, it is not the funds which were paid out to the building corporations for which an accounting is sought,¹ but rather, sums which Dime retained as hereinafter set forth.
Between December 31, 1958 and March 9, 1959, the aforesaid building corporations conveyed title to 46 one-family homes to 46 different purchasers. In each fee transaction Dime converted the building loan mortgages to permanent mortgages by extension agreements executed by the purchasers wherein they agreed to assume payment of the obligation secured by said mortgages. At each closing, when the extension agreement was signed by the purchaser, a specific sum of money was retained by Dime pursuant to a “ security deposit agreement ”, for the completion of certain items of work, principally consisting of grading, seeding, landscaping, exterior painting and other similar items, which omissions were discovered upon either F. H. A. or bank inspections of the property. The amounts retained on each closing ranged from $100 to $850. Dime asserts, and it is not denied, that these separate sums were accepted as an inducement to close the mortgage transactions, and it had no notice or knowledge of the plaintiffs’ claims which were then allegedly due and owing from the building corporations. The total sum of these deposits held by Dime at the commencement of this action was approximately $25,000.²
The only allegation of the complaint seeking to thrust liability upon Dime to account for these deposits as diverted trust funds, is paragraph 37 which states: “ 37. Upon information and belief *609 that out of the proceeds of such sales, sums of money were deposited with the defendant Dime in a special account referred to as “ escrow deposits ” as security for the performance by A-C and of the seven corporations or any of them of certain covenants and agreements made with each purchaser, separately constituting additional items of work to be performed and materials to be furnished, and said escrow deposits were and are part of the trust funds received by the seven corporations or any of them, and A-C, upon the sale of said dwellings aforementioned and constitute trust funds, and upon information and belief, the seven corporations or any of them, and A-C, each performed the terms and conditions of such escrow deposits contained in such agreements and discharged their obligations thereunder and Dime holds and continues to hold and retain all or a large part thereof despite due demand therefor having been made by these plaintiffs and by retaining and refusing to pay over the same Dime has converted the same to its own use.”
Insofar as this allegation states that the trust funds here in issue arose “out of the proceeds of * * # sales” to the purchasers of homes, the court will treat the same as amended to allege that the trust funds emanated as advances pursuant to building loan agreements under section 36 and subdivision (3) of section 13 of the Lien Law, for this is clearly plaintiffs’ present position as evidenced by the papers and brief in support of their cross motion for summary judgment. (Civ. Prac. Act, § 105.)
That part of the above allegation (as deemed amended), wdiich states that the items of work for which deposits were taken were performed by the building corporations, is controverted by Dime, which has annexed to its moving papers affidavits by one of its vice-presidents, an employee in the appraisal department and one Howard M. Siegerman, former president of the Lakeside Village Civic Association, all stating that the building corporations failed to complete the items and that Dime completed the work. The affidavits of the vice-president and the employee state that Dime used the deposits to pay the expenses incurred. These expenditures were admittedly made after the plaintiffs instituted this action. It is the unexpended balance of these deposits amounting to $4,501.23, which Dime, by the third branch of its motion, seeks to pay into court.
Plaintiffs’ affidavit in opposition, made by their attorney, does not dispute Dime’s version of the facts as to either the building corporations’ nonperformance of the incomplete items of work or Dime’s application of the deposit funds thereto. Dime’s version of those facts must therefore be accepted as true (Di Sabatos v. Soffes, 9 A D 2d 297, 300). However, plaintiffs *610 maintain that Dime, having received notice of the plaintiffs’ claims to the funds on deposit by the commencement of this action, is guilty of a diversion of “ trust funds ” under section 36 and subdivision (3) of section 13 of the Lien Law.
The issues thus presented are (a) whether the deposits with Dime were 11 trust funds ’ ’ within the meaning and contemplation of subdivision (3) of section 13 and section 36 of the Lien Law, and, if so, (b) was the retention and/or subsequent application thereof by Dime an improper diversion which would accord plaintiffs a right to compel Dime to render an accounting.
In deciding this case, the court is called upon to construe a statute no longer on the books, i.e., section 36 of the Lien Law which was enacted in 1929 and repealed in 1959, its provisions (with modifications) being transferred to a new article 3-A (L. 1959, ch. 696, enacting Lien Law, §§ 70-79; see 1959 Report of N. Y. Law Rev. Comm., p. 185; N. Y. Legis. Doc., 1959, No. 65 [F.]). This statute (Lien Law, § 36, as amd. by L. 1942, ch. 808 and L. 1953, ch. 644) embodied the trust concept of building loan advances and provided in part as follows: ‘1 The funds received by an owner under any and all advances made pursuant to a building loan contract and the funds received by an owner under every mortgage specified in subdivision three of section thirteen of this chapter * * * are hereby declared to constitute trust funds in the hands of the owner to be applied first for the purpose of paying the cost of improvement, and any owner and any officer, director or agent of any owner who applies or consents to the application of such funds for any other purpose prior to paying the cost of improvement is guilty of larceny * * *. Such trust may be enforced by civil action maintained as provided in article three-a of this chapter * * *. For the purposes of a civil action only, the trust funds shall include the right of action upon a building loan contract, mortgage or conveyance for moneys due or to become due thereunder to the owner, as well as moneys actually received by him. ’ ’
On the first issue, the court holds that the deposits were trust funds within the meaning and contemplation of section 36 and subdivision (3) of section 13 of the Lien Law. Dime’s contention that no trust res ever came into existence because the funds in issue were not “ advanced ” to or “ received ” by the building corporations, but were at all times “ withheld ” by it pending completion of the improvements, exalts bookkeeping methods over substance. Whether an amount was deducted from the last building loan advance or deposited with Dime by check of the building corporations simultaneously with the last advance to them by the bank, the legal effect was the same. The building *611 loan agreement was closed out; a new contractual relationship with the purchaser was established by the extension agreement. The building corporation was delivered a “ deposit agreement ” wherein Dime acknowledged it had
‘ ‘ Received from (the applicable building corporation) the sum of (amount) * * * which amount will be held by the undersigned (the Dime) without interest as security for the completion of the following items (of incompleted work) on or before (date). In the event that the foregoing work is not completed in a manner satisfactory to us on or before said date, we shall have the right without obligation to apply the said deposit
“ □ in reduction of the principal sum of the mortgage this day being made with the Bank on the above described premises.
“ □ to any and all costs incurred in completing said work ’ ’.
In 40 of the 46 closings, in which the mortgage loans were F. H. A. insured, an “ X ” was placed in the second box. The other 6 closings involved conventional mortgages and the “ X ” was placed in the first box. In all cases, however, upon the default of the building corporations, the funds were actually applied by Dime to completion of the work.
The giving of this receipt and the closing out of the building loan agreement belie Dime’s contention that it did not, in fact, advance the entire proceeds of the loan to the building corporations. It is also to be noted that subdivision (3) of section 13 of the Lien Law states that the trust res shall consist of the 11 right to receive advances as distinct from advances actually received” and section 36 of the Lien Law provides that “ [f]or the purposes of a civil action only, the trust funds shall include the right of action upon a building loan contract, mortgage or conveyance for moneys due or to become due thereunder to the owner, as well as moneys actually received by him ”. So even if the funds were not technically “ advanced ”, they were still impressed with the statutory trust.
The second issue, as to whether Dime diverted trust funds, is more perplexing and calls for careful analysis of the applicable statutes and legal authorities. It is clear that a statutory beneficiary of a Lien Law trust seeking to recover funds in the hands of a transferee, no less than a beneficiary of a common-law express trust, must affirmatively show that the transferee had actual or constructive notice not only that the funds were the subject of a trust, but also that they were transferred in breach of the trustee’s duty (Gramatan-Sullivan, Inc. v. Koslow, 143 F.
*612 Supp. 641, 646, affd. 240 F. 2d 523; Raymond Concrete Pile Co. v. Federation Bank & Trust Co., 288 N. Y. 452, 458-460). In the Raymond Concrete case (supra), the defendant bank applied trust funds arising under section 25-a of the Lien Law on deposit with it in repayment of its loan to the contractor. The bank had knowledge that the funds were receipts from a public improvement but not that there were unpaid subcontractors and materialmen. The Court of Appeals held that the bank was not accountable to the statutory beneficiary of the funds since it was a transferee for value and had no notice that the transfer constituted a violation of trust duty. Although another operative part of this decision, which was rendered just prior to the 1942 amendments to the Lien Law, held that no civil remedy was available to enforce the trust fund provisions, the Court of Appeals recently stated the primary ground for decision in the Raymond Concrete case to be: “that the statutory beneficiaries of the Lien Law trust were not privileged to trace payments made to the contractor-trustee into the hands of an assignee for value absent proof that the assignee had actual notice of the existence of unpaid claims for supplies and materials ” (Aquilino v. United States of America, 10 N Y 2d 271, 276; see, also, Metropolitan Sand & Gravel Corp. v. Lipson, 7 A D 2d 916, 917). The mere fact that the bank knew or should have known that the funds were the subject of a trust is insufficient to charge them with notice; there must be knowledge of the existence of outstanding mature trust claims at the time of the transfer (Metropolitan Sand & Gravel Corp. v. Lipson, supra; Barclay v. Corn Exch. Bank Trust Co., 267 N. Y. 630; Gramatan-Sullivan, Inc. v. Koslow, 240 F. 2d 523, supra). In the case of a bank dealing at arm’s length with a borrower, the courts have refused to recognize a duty to inquire. (See Raymond Concrete Pile Co. v. Federation Bank & Trust Co., supra; Clarke v. Public Nat. Bank & Trust Co. of N. Y., 259 N. Y. 285; Bischoff v. Yorkville Bank, 218 N. Y. 106; 1958 Report of N. Y. Law Rev. Comm., p. 547; N. Y. Legis. Doc., 1958, No. 65 [F.], p. 43 etc.)
A careful examination of the complaint in the case at bar, including paragraph 37 quoted in its entirety above, and the plaintiffs’ affidavit on this motion, fails to reveal any allegation, claim or contention that the transferee, Dime, had any notice of the plaintiffs’ outstanding trust claims during the period of time it accepted the security deposits. The court must accept as true Dime’s uncontroverted statements in its moving papers that it accepted the deposits as an inducement to it to make a contemporaneous advance and close the mortgage transaction which, under the doctrine of bona fide purchase, constitutes *613 “value”. (Restatement, Trusts, § 298 etc.) With such a state of facts, Dime is entitled to summary judgment dismissing the complaint on the principles of bona fide purchaser or transferee for value.
However, even if Dime were not considered a bona fide purchaser, it would be entitled to summary judgment on another principle. Under section 36 of the Lien Law, the owner-trustee is prohibited from using trust funds for any other purpose “ prior to paying the cost of improvement ” and under subdivision (3) of section 13 of the Lien Law, the owner-trustee expressly covenants that he will receive the building loan advances “as a trust fund to be applied first for paying the cost of improvement ’ ’. The term ‘ ‘ cost of improvement ’ ’ is broadly defined in section 2 (subd. 5) of the Lien Law to include ‘1 expenditures incurred by the owner in paying the claims of a contractor * w * a subcontractor, laborer and materialman, arising out of the improvement, and shall also include fair and reasonable sums paid for obtaining building loan and subsequent financing * * * sums paid to discharge or reduce the indebtedness under mortgages # * * and other encumbrances upon real estate existing prior to the time when the lien provided for in this chapter may attach, sums paid to discharge building loan mortgages whenever recorded ’ ’. These statutes which have been enacted for the protection of those furnishing labor and material towards the improvement of real property are “to be construed liberally to secure the beneficial interests and purposes thereof.” (Lien Law, § 23.)
The entire fund on deposit with Dime (excepting $4,501.23) was used to improve the real property. Plaintiffs cannot logically be said to be injured if the deposit funds were so used because the amount called for in the building loan contracts for use in construction was not diminished. Where the amount properly going into the improvement equals the amount which, according to the building loan agreement, should go into the improvement, there is no diversion (see 1959 Report of N. Y. Law Rev. Comm., supra, pp. 243, 244; N. Y. Legis. Doc., 1959, No. 65 [F.], pp. 59, 60; 1958 Report of N. Y. Law Rev. Comm., supra, p. 550 etc.; N. Y. Legis. Doc., 1958, No. 65 [F.], p. 46 etc.; Mannarino v. President & Directors of Manhattan Co., 160 Misc. 232, 235-236; Restatement, Trusts, § 291).
Accordingly, Dime’s motion, insofar as it seeks summary judgment dismissing- the complaint and leave to deposit the balance in its hands into court to the credit of this action, is granted and the plaintiffs’ cross motion is denied.

 Lien Law, § 13, subd. (3): “ Nothing in this subdivision shall be considered as imposing upon the lender any obligation to see to the proper application of such advances by the owner ”.

 Plaintiffs state the amount at $27,850; Dime’s brief states the amount at $25,000. Exhibit A annexed to Dime’s moving papers, according to the court’s mathematics, would indicate that the total sum is $25,500.