[614 NYS2d 418]

WILLIAM J. DALY, Appellant-Respondent, v ATLANTIC BANK OF NEW YORK, Respondent-Appellant, et al., Defendants. (And an Interpleader and Third-Party Action.)

First Department, July 14, 1994

APPEARANCES OF COUNSEL

*David J. Molton* of counsel *(Laurie Dolinger* with him on the brief; *Molton & Moelis,* attorneys), for appellant-respondent.

*Michael T. Sullivan* of counsel *(Zeichner Ellman & Krause,* and *James S. Maxwell,* attorneys), for respondent-appellant.

## OPINION OF THE COURT

ELLERIN, J.

At issue on this appeal is whether defendant Atlantic Bank of New York (ABNY) wrongfully utilized funds on deposit in two accounts held in the name of third-party defendant Queensboro Management, Inc. (QMI) to offset debts owed to the bank by QMI.

Generally, in the absence of agreement to the contrary, a bank is entitled to apply a deposit to the payment of a debt due it by the depositor (9 NY Jur 2d, Banks and Financial Institutions, § 304, at 542). However, when a bank is on notice that funds in a depositor's account are owned by a third party, the bank cannot appropriate those funds in order to set them off against a debt of the depositor *(Raymond Concrete Pile Co. v Federation Bank & Trust Co.,* 288 NY 452; *Gerrity Co. v Bonacquisti Constr. Corp.,* 156 AD2d 800; *see also, Schreibman v Chase Manhattan Bank,* 15 AD2d 769). A bank will be considered to have such notice when it is aware of facts which would fairly provoke it to inquire as to the true ownership of

the funds and such inquiry, if made with ordinary diligence, would reveal the true ownership *(see, Union Stock Yards Bank v Gillespie,* 137 US 411, 415-419; 81 NY Jur 2d, Notice and Notices, § 9, at 279-280).

■ In this case, we find that plaintiff, in his capacity as the representative of an association of real estate cooperative corporations formerly managed by QMI, has demonstrated the absence of material issues of fact as to whether, prior to its appropriation of the funds held in a QMI account denominated "Realty Two", ABNY was aware of such facts as should have provoked inquiry as to the true ownership of the funds by certain members of the association. In light of this finding, the decision of the IAS Court denying plaintiff summary judgment as to its claim that these funds were converted should be reversed, and summary judgment should be entered in plaintiff's favor on the issue of liability.

In 1988, representatives of QMI, which was in the business of managing a large number of Queens County real estate cooperative corporations, approached ABNY and stated that they wished to transfer all their accounts to ABNY and to obtain a $200,000 loan. Several accounts were duly opened in QMI's name, including three accounts specifically denominated as agency accounts for two named cooperative corporations, two accounts denominated "Realty One" and "Realty Two," an account denominated the "Insurance Account," an unnamed checking account, a "Payroll Account," and a certificate of deposit in the amount of $150,000. In 1989, ABNY increased the amount of the QMI loan to $250,000. Subsequently, the Realty One account was closed and its funds transferred to the Realty Two account.

The evidence presented on the parties' motions for summary judgment shows that, in early 1990, at a point when QMI's unnamed checking account and Payroll Account were overdrawn in a total amount of $90,000, stories began to appear in the media to the effect that QMI or its principals were under criminal investigation concerning the possible misappropriation of funds from the cooperative corporations which QMI managed. Soon after, in February 1990, ABNY learned that QMI had ceased doing business and, at about the same time, received telephone calls from one or more persons identifying themselves as representatives of cooperative corporations managed by QMI who informed ABNY that funds belonging to the corporations were being held in QMI accounts at ABNY

and requesting that QMI's accounts be frozen. On February 15, 1990, ABNY was informed by QMI employees that the funds in the Insurance Account and the Realty Two account were held by QMI on behalf of cooperative corporations. Notwithstanding such information and requests to freeze the accounts, on February 16, ABNY declared a default on the QMI loan and appropriated the funds in both the Realty Two account, totaling over $112,000, and the certificate of deposit, which was, by then, valued at approximately $175,000, to set off against QMI's indebtedness of $90,000 for the overdraft and $250,000 in unpaid principal on the loan. At the same time, ABNY froze the three accounts which were denominated agency accounts for specific cooperative corporations and the Insurance Account.

Under these circumstances, there is no question ABNY had more than sufficient knowledge obligating it to make inquiry as to the true ownership of the funds in the Realty Two account before appropriating such funds. The record clearly establishes that ABNY was aware that QMI was in the business of managing a number of cooperative apartment buildings and that it was, as a result, constantly in possession of large sums of money which it held as agent for the cooperative corporations in order that it might carry out its duty of paying bills on their behalf. Additionally, ABNY knew that QMI was being investigated on charges of mismanagement and criminal wrongdoing, that it had failed to make certain tax payments on behalf of the corporations it represented and that it was approaching insolvency. Moreover, immediately prior to the setoff, ABNY had expressly been informed that funds belonging to the cooperative corporations were being held in accounts in QMI's name and had been asked to freeze all such accounts.

Furthermore, in addition to this general information concerning the status of QMI's accounts, ABNY was specifically on notice that the funds in the Realty Two account belonged to the cooperative corporations and were not operating funds of QMI itself. Not only had ABNY received information from QMI's employees that the Realty Two account was a fiduciary account, but it was also on notice that the checks which had been deposited in the Realty Two account, and its predecessor account, of which ABNY held microfilmed records, frequently bore a notation indicating that they represented a certain month's "maintenance" or "rent". Additionally, ABNY knew that QMI had consistently refused to transfer funds from the

Realty Two account to cover overdrafts in its operating accounts.

In this setting ABNY was not entitled to simply appropriate these funds and turn a blind eye to the numerous indicators that the funds in the account were being held by QMI for the corporations it represented. ABNY was clearly in possession of sufficient facts to require it to diligently inquire as to the real ownership of those funds. ABNY's argument that it did not have sufficient time to make such an inquiry, by, for example, examining the microfilmed records of the checks deposited to the account, and that it was unable to immediately locate QMI's principals, is specious, as it could simply have frozen the account so that it could make the necessary inquiry at its leisure.

Accordingly, we hold that since ABNY was on notice that QMI was not the true owner of the funds represented by the Realty Two account at the time it appropriated such funds, it should be held liable for their conversion.

The IAS Court did not reach the issue of whether the members of the association represented by plaintiff are the owners of the entire proceeds that were on deposit in the Realty Two account. The record does indicate, however, that not all the cooperative corporations which were managed by QMI are members of that association. According to plaintiff, none of the nonmember corporations make claim to any of the funds and none has chosen to appear in the within action. However, the record on this appeal does not make clear whether all such nonmember corporations have been served and the matter must therefore be remanded to the IAS Court for a determination as to whether plaintiff represents the true owners of all of the funds or, if not, what part of the funds are the property of the association's members.

As to plaintiff's claim concerning the funds covered by the separately held certificate of deposit, we find that the IAS Court properly denied summary judgment since questions of fact remain as to whether ABNY was under a similar duty of inquiry concerning the true ownership of those funds, as well as whether all or part of the funds represented by this account are owned by the members of the association, and that further discovery concerning these issues should be permitted. The only fact, other than the general information concerning QMI's status, which plaintiff points to as having put ABNY on notice as to the true ownership of the funds in

the certificate of deposit is that they were transferred, several years earlier, from an account at a separate bank which contained the word "agency" in its title. This fact alone would not be sufficient to provoke inquiry years later concerning the ownership of the funds.

Wherefore, the order of the Supreme Court, Queens County (Joseph M. Lane, J.), entered on or about November 18, 1991, which denied defendant-respondent-cross-appellant's motion for summary judgment dismissing the complaint and denied plaintiff-appellant-cross-respondent's cross motion for partial summary judgment, should be modified, on the law, to reverse the order insofar as it denied that part of plaintiff-appellant-cross-respondent's motion for summary judgment on his claim against the Realty Two account, to grant summary judgment to plaintiff insofar as to provide that the monies represented by the account be returned to their rightful owners and the matter remanded to determine the amount of these funds to which the association's members are entitled and should otherwise be affirmed, with costs.

CARRO, J. P., WALLACH, KUPFERMAN and NARDELLI, JJ., concur.

Order, Supreme Court, Queens County, entered on or about November 18, 1991, which denied defendant-respondent-appellant's motion for summary judgment dismissing the complaint and denied plaintiff-appeallant-respondent's cross motion for partial summary judgment, unanimously modified, on the law, to reverse the order insofar as it denied that part of plaintiff-appellant-respondent's motion for summary judgment on his claim against the Realty Two account, to grant summary judgment to plaintiff insofar as to provide that the monies represented by the account be returned to their rightful owners and the matter remanded to determine the amount of these funds to which the association's members are entitled and otherwise affirmed, with costs.