OPINION OF THE COURT
Robert F. Doran, J.
By motion, plaintiff Gerrity Company, Inc., on behalf of itself and all other persons entitled to a share of funds received by Bonacquisti Construction Corp. as contractors, seeks an order granting plaintiff summary judgment against defendant Norstar Bank of Upstate NY. Defendant Norstar cross-moves for an order denying plaintiff’s motion and granting summary judgment dismissing plaintiff’s complaint. Defendant Bonacquisti has not appeared on the motions.
Many of the facts are undisputed. Defendant Bonacquisti is a construction corporation which entered into and performed a contract with Southway Realty Corp. to make certain improvements to real property owned by Southway in Verona, New York. Plaintiff Gerrity supplied material for use in the Southway project. The material was at the agreed price of $16,728.23.
At various times, defendant Bonacquisti was paid by South-way for the work performed under the contract, to wit: $23,518, $29,134 and $37,398.57. These three payments were deposited by defendant Bonacquisti in its corporate checking account in defendant Norstar on December 18, 1985, January 16, 1986 and February 14, 1986.
The papers further disclose that defendant Bonacquisti had its corporate checking account with defendant Norstar (previously State Bank of Albany) since 1973, and that, sometime prior to February 21, 1986, it became indebted to said bank as evinced by certain demand notes.
When defendant Bonacquisti defaulted in the payment of these notes, defendant Norstar, on February 21, 1986, removed from the Bonacquisti corporate checking account the sum of $117,874.32. That set-off amount was comprised of the *188 payment of certain demand notes totaling $115,000, plus all accrued interest of $1,025.54, plus the sum of $1,848.78 for the February 1986 payment of principal and interest on other notes.
The $115,000 in demand notes was given by defendant Bonacquisti in return for general operating line-of-credit loans in the amount of $115,000 made in 1983 and 1984.
Plaintiff alleges that, when Southway, the owner, made the three aforementioned payments to defendant Bonacquisti, the moneys became trust funds until all of the materials and services provided to the improvement were paid in full.
The first issues to be resolved: Were the funds deposited in the Bonacquisti corporate checking account trust funds, and did defendant Norstar have a duty to see if there were any trust funds in the corporate account before removing moneys to satisfy the notes?
Lien Law article 3-A was designed and enacted to create trust funds out of certain construction payments to assure payment to subcontractors, architects, engineers, surveyors, laborers and materialmen as well as specified taxes and expenses of construction. In order to make the statutory trusts effective, various procedures are required in the handling of said trust moneys, much akin to the requirements affecting voluntary trusts.
The statutory trustee (defendant Bonacquisti) is required to maintain separate books but not a separate bank account for trust funds. Additionally, its books of account must indicate the beneficiary of each trust and all of the persons to whom trust funds are paid. Persons dealing with those handling trust moneys, who may be charged with notice of the trust, may share in the liability for ¿unlawful diversions (Caristo Constr. Corp. v Diners Fin. Corp., 21 NY2d 507, 512).
Paraphrased, Lien Law § 71 (2), (4), (5) provide that trust assets shall be held and applied for the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen; that all persons who have claims for payment of trust assets are beneficiaries of the trust; and that every trust claim shall be deemed to be in existence from the time of the making of the contract or the occurrence of the transaction out of which the claim arises. Clearly, the three deposits from the Southway project were trust funds (see, Aquilino v United States of Am., 10 NY2d 271).
Older decisional law has held that there may be no recovery *189 against a bank if it did not know — or had no reasonable grounds to suspect — at the time of the alleged diversion of funds that there were unpaid materialmen or other statutorily protected parties (Raymond Concrete Pile Co. v Federation Bank & Trust Co., 288 NY 452; Metropolitan Sand & Gravel Corp. v Lipson, 7 AD2d 916).
However, the older decisions were decided before comprehensive amendments were made to Lien Law article 3-A in 1959. Since those amendments, there has been a tendency to place a greater burden on a lender. Perhaps the best expression of the change is found in National Sur. Corp. v Fishkill Natl. Bank (61 Misc 2d 579, 585, affd 37 AD2d 537):
"Much emphasis is placed by the bank on its lack of actual notice of any misuse of the funds by the contractor. The examination before trial of its representative discloses not only a lack of knowledge of any possible diversion, but an almost painstaking effort to avoid extensive investigation and scrutiny. Prior to the 1959 amendments several decisions tended to relieve lending institutions of responsibility when no evidence of actual knowledge of diversion appeared. For example, Raymond Concrete Pile Co. v. Federation Bank & Trust Co. (288 N. Y. 452) held that actual knowledge of the failure to pay laborers and materialmen was required. The later case of Aquilino v. United States (10 N Y 2d 271, 276), however, pointedly noted that the Raymond case 'must be limited to sections 25-a and 36-a as they read before 1942/ Significant also is the distinction made in the case of Utica Sheet Metal Corp. v. J E. Schecter Corp. (25 A D 2d 928) where the court said: 'Although a depository in such case, having knowledge of the existence of the trust, is not liable for misappropriations generally, without knowledge, in addition, of the violation of the trust (Bischoff v. Yorkville Bank, 218 N. Y. 106), the issue is at least an open one when the depository transfers the fund to itself (see Aquilino v. United States, 10 N Y 2d 271, 279).’ In view of the developing tendency to cast the risk of loss on the lender, where trust beneficiaries have not been paid, a distinction must certainly be drawn between those cases where a diversion is claimed from a misuse of funds by a trustee (owner or contractor) with knowledge of the lender, and those cases where the lender itself is a transferee.
"The Law Revision Commission in its report, preceding the 1959 enactment, pointed to the fact that existing practices permitted the owner or contractor to divert assets of the trust to payment of claims arising in another operation or merely *190 to dissipate them. 'These are the very evils the trust fund provisions were designed to overcome.’ The commission said further that the new rules were 'calculated to encourage inquiry by the lender as to the state of the trustee’s accounts and a degree of supervision of the application of advances made’ (1959 Report of N. Y. Law Rev. Comm., pp. 215, 216-217; N. Y. Legis. Doc., 1959, No. 65F, pp. 31, 32-33).”
Though this court has found no case directly on point, it nevertheless feels that the law has reached and should reach such a state that, under the facts of this case, defendant Norstar had a duty to determine if there had been any trust funds deposited in the corporate account, and, if so, whether the trust funds had already been paid out so that any non-trust money still remaining in the corporate account could then be set off against the money owed the bank. This court holds that, once a bank has knowledge that a corporate account is in the general contracting business (here, defendant Norstar admits that it has known for many years that defendant Bonacquisti was in the general contracting business), then such duty arises on the part of the lender where the lender itself is going to be a transferee of possible trust funds. At the time of the setoff by defendant Norstar, no investigation, tracing or determination was made by it.
In a supplemental affidavit of defendant’s attorney, defendant Norstar attempts to make that determination on this motion. Plaintiff argues that the supplemental affidavit was not timely served and therefore should not be considered by the court. Further, plaintiff points out that the supplemental affidavit is merely an attorney’s affidavit.
It is true that the attorney for defendant made no attempt in the supplemental affidavit to excuse his lateness, and it is also true that the affidavit is that of the attorney rather than that of a bank officer, who would have the capacity to make this hearsay bank account record of deposits and withdrawals a proper business record for consideration of the court. However, the court, in furtherance of judicial economy and because there is no absolute bar to successive summary judgment motions, will nevertheless consider the supplemental affidavit (cf., Russell v Trask Co., 125 AD2d 136). The court also notes that plaintiff had an opportunity to reply to the late supplemental affidavit. It did so in a letter dated December 8, 1986, which the court has considered.
If the court did not consider the supplemental affidavit, it *191 would have to deny summary judgment to plaintiff because there would be a question of fact as to whether the trust funds were still in the account on the date of setoff.
Considering the bank account records in light of I-T-E Imperial Corp.-Empire Div. v Bankers Trust Co. (73 AD2d 861, affd 51 NY2d 811), plaintiff, in the court’s opinion, is entitled to summary judgment in the amount of $37,398.57.
The first trust fund deposit made on December 18, 1985 was $23,518. At the close of business on December 18, 1985, the bank records show a remaining balance of $21,571.26. The following table shows that the trust funds of $23,518 would have been expended under the first-in, first-out rule of I-T-E Imperial Corp.-Empire Div. (supra).
[[Image here]]
*192 [[Image here]]
Thus, under the first-in, first-out rule, the deposit of trust funds of $29,134 made on January 16 would have been expended after the check of $100,000 cleared on February 11, 1986, leaving a minus balance of $76,557.87 without considering subsequent deposits.
The final deposit of trust funds of $37,398.57 was made on February 14, 1986 along with $8,162.76 of nontrust funds, for a total deposit of $45,561.33. At the close of business on February 14, there was a balance of $121,357.49. The following table shows there would have been $74,971.82 still remaining under the first-in, first-out rule before defendant Norstar, by deposit memos of February 21, 1986, removed $1,848.78 and $116,025.54, leaving a balance of $3,676.76 in the account as of the end of February 21, 1986. The bank account records also show a deposit of nontrust funds of $31,867.03 on February 20, 1986.
*193 [[Image here]]
Thus, the bank records clearly show that under the first-in, first-out rule, defendants diverted the entire last trust fund deposit of $37,398.57.
As to the first two deposits, those trust funds had been fully disbursed and did not constitute part of the balance against which defendant Norstar exercised its right of setoff. Thus, the withdrawals of those trust funds constituted value such that defendant Norstar became a holder in due course or purchaser in good faith for value and without notice and was thereby protected by Lien Law § 72 (1), since there was nothing to indicate that defendant Norstar had any notice that the withdrawals constituted a diversion of trust funds, and, at the time of those withdrawals, it was under no duty to exercise vigilance to protect funds from possible misappropriation by the trustee (I-T-E Imperial Corp.-Empire Div. v Bankers Trust Co., 73 AD2d 861, affd 51 NY2d 811, supra).
Plaintiff also claims it is entitled to recover because defendant Norstar could have protected itself by filing a "Notice of Lending” pursuant to Lien Law § 73. The court disagrees.
Lien Law § 73 is not applicable in this situation. A "Notice of Lending” can be used only where funds are advanced to or on behalf of a trustee for the purposes of the trust. Here, defendant Norstar did not lend for purposes of the trust funds of the Southway project. Rather, it had loaned the money to plaintiff prior to the Southway project. The funds loaned to plaintiff were for a general line of credit and were not tied in to any specific improvement of real property. However, the enactment of Lien Law § 73 in 1959 is part of the evidence that the Legislature intended to create a greater burden and risk of loss on lenders.
Under the decisional law of this State, although summary *194 judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue of fact, only the existence of such a bona fide issue raised by evidentiary facts will suffice to defeat such motion. Conclusory or irrelevant allegations will not defeat a motion for summary judgment (Rotuba Extruders v Ceppos, 46 NY2d 223; Nidds v Procidano, 95 AD2d 912).
Since there are no triable issues of fact, plaintiff’s motion is granted to the extent of awarding plaintiff $37,398.57; defendant Norstar’s cross motion is denied.
Lastly, the court concludes that this action meets all the prerequisites for consideration as a representative action under Lien Law §77, and the court will award attorneys’ fees pursuant to its discretion under CPLR 909. The amount and source will be subject to a further proceeding.