GERRITY COMPANY, INC., on Behalf of Itself and All Others Similarly Situated, Respondent, v BONACQUISTI CONSTRUCTION CORPORATION, Defendant, and NORSTAR BANK OF UPSTATE NY, Formerly STATE BANK OF ALBANY, Appellant.

Third Department, March 10, 1988

## APPEARANCES OF COUNSEL

*McNamee, Lochner, Titus & Williams, P. C. (George F. Carpinello* of counsel), for appellant.

*Couch & Howard, P. C. (Mark W. Couch* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

Commencing in 1983, defendant Bonacquisti Construction Corporation (hereinafter Bonacquisti) began borrowing from defendant Norstar Bank of Upstate NY (hereinafter Norstar) and its predecessor bank, State Bank of Albany, under an unsecured line of credit of $115,000, evidenced by demand notes. During the entire relevant period, Bonacquisti was a contractor in the construction industry and kept a general corporate checking account under its name at Norstar and its predecessor. Norstar concedes that it was generally aware that Bonacquisti was in the construction business. In 1985, Bonacquisti was engaged in the performance of a construction contract for Southway Realty Corporation (hereinafter Southway) in the Town of Verona, Oneida County. Bonacquisti received and deposited in its Norstar general account checks from Southway in payment for its work as follows: (1) a check dated December 13, 1985 for $23,518, bearing the notation "Job-Verona N.Y.", (2) a check dated January 2, 1986 for $29,134, bearing the notation "Verona, N.Y.", and (3) a check dated February 11, 1986 for $37,398.57, bearing the notation "Job b350 Verona". The deposit slips accompanying the checks did not further identify their source or the nature of the payments they represented.

Shortly after the last of the Southway checks was deposited, Bonacquisti defaulted on its Norstar loan. Accordingly, on February 21, 1986, Norstar exercised its rights under their loan agreement and set off the entire outstanding indebtedness and accrued interest, totaling over $117,000, against the then existing balance in the Bonacquisti general checking account. Plaintiff was a supplier on Bonacquisti's Verona project. Alleging that it had furnished materials for that

project worth $16,728.23 for which it was not paid and was, therefore, a statutory beneficiary of the trust funds created under Lien Law article 3-A by Bonacquisti's receipt of Southway's payments on a "contract for an improvement of real property" (Lien Law § 70 [1]), plaintiff brought suit against Bonacquisti and Norstar on behalf of itself and other similar trust beneficiaries (see, Lien Law § 77 [1]) for the diversion of trust fund assets resulting from Norstar's offset against Bonacquisti's account in which the Southway payments were deposited.

After issue was joined, plaintiff moved for summary judgment against Norstar. Norstar opposed this motion and cross-moved for the same relief. In a supporting affidavit on the motions, a Norstar officer averred that, when Norstar made the setoff, the bank had no knowledge either that Lien Law article 3-A trust funds were contained in the Bonacquisti account or that there were then unpaid claims of statutory trust beneficiaries. Relying on *Raymond Concrete Pile Co. v Federation Bank & Trust Co.* (288 NY 452, *adhered to on rearg* 290 NY 611), Norstar contended that without actual knowledge of the existence of trust funds in the account and the resultant diversion of trust assets, it was entitled to take payment of Bonacquisti's debt free of the trust, as a good-faith purchaser for value. Supreme Court ruled in favor of plaintiff and granted summary judgment for what it determined was the unexpended balance of the Southway check deposits remaining in Bonacquisti's account at the time of the offset, namely, $37,398.57 (135 Misc 2d 186). The court held that since Norstar knew that Bonacquisti was in the construction business, Norstar had a duty of inquiry to determine whether Lien Law article 3-A trust assets were contained in Bonacquisti's general checking account before offsetting funds in the account to satisfy Bonacquisti's indebtedness to Norstar. Such a duty, the court reasoned, was imposed under the 1959 amendments to the trust fund provisions of the Lien Law (L 1959, ch 696). Having failed to make such an inquiry, Norstar lost its status as a good-faith purchaser and was liable for the diversion of trust assets. Norstar's appeal then ensued.

In our view, neither the language nor the legislative history of the 1959 amendments to the Lien Law supports Supreme Court's conclusion that, solely because Norstar was aware of the nature of Bonacquisti's business, it was liable for the diversion of trust assets in making the offset. As will be discussed more fully below, the immunity of a good-faith

purchaser under established common-law trust principles would be materially diminished if knowledge of a depositor's business in the construction field was sufficient notice to put a creditor bank on inquiry as to whether payments received on the indebtedness of the depositor came from Lien Law trust assets. The 1959 amendments to the Lien Law upon which Supreme Court relied as effecting this charge were enacted as a result of comprehensive studies, reports and legislative proposals by the Law Revision Commission in 1958 and 1959 (see, 1958 Report of NY Law Rev Commn, at 505-585; 1959 Report of NY Law Rev Commn, at 185-263). As is clearly set forth in both of the Commission's reports, its proposals mainly addressed two problems relating to the rights of trust beneficiaries against transferees under the trust provisions of the Lien Law as it then existed: "(1) whether [trust beneficiaries'] rights vary according to the dates on which their claims arise or mature; and (2) whether it is material that the recipient was reimbursed by the transfer for advances which were used to satisfy statutory claims" (1958 Report of NY Law Rev Commn, at 520).

As to the first of those open questions, the Law Revision Commission's proposal was designed to insure that, contrary to the decision in *Gramatan-Sullivan, Inc. v Koslow* (240 F2d 523, *cert denied* 353 US 958), the right of a trust beneficiary to enforce a claim against the transferee is not dependent upon when the claim matured and that a transfer of trust assets for a nontrust purpose is a misappropriation, irrespective of whether matured claims then exist (1959 Report of NY Law Rev Commn, at 209; *see,* Lien Law § 70 [3]; § 72 [1]). As to the second question, whether a transferee who advanced moneys to pay for the improvement can take repayment from funds which would otherwise constitute trust assets, the 1959 legislation created a procedure whereby a lender who finances a statutory trustee on a specific construction project may file a "notice of lending" when funds are advanced, and then has an affirmative defense that a subsequent transfer of trust funds to him was in repayment of advances to the trust that were actually applied for trust purposes (Lien Law § 73; *see,* 1959 Report of NY Law Rev Commn, at 216-217).

As the foregoing demonstrates, the 1959 amendments were not intended to alter the application of common-law trust principles regarding the good-faith purchaser defense of a transferee of trust assets which were theretofore available and applied when statutory beneficiaries under the Lien Law

sought enforcement of their trust against transferees of trust assets *(see, Raymond Concrete Pile Co. v Federation Bank & Trust Co.,* 288 NY 452, *supra; Metropolitan Sand & Gravel Corp. v Lipson,* 7 AD2d 916). Indeed, the Law Revision Commission explicitly disclaimed any such purpose: "A holder in due course of a negotiable instrument and a purchaser in good faith for value and without notice that an assignment to him of moneys due or to become due in a diversion of trust assets are, of course, protected under general principles of trust law" (1959 Report of NY Law Rev Commn, at 221). The statute expressly preserves the good-faith purchaser defense (Lien Law § 72 [1]), and treats the defense of a transferee under the notice of lending provisions as an additional, affirmative defense available to a lender/transferee who does not otherwise qualify as a good-faith purchaser.

Under general trust law principles, clearly the facts relied upon by Supreme Court, that Norstar was aware that its depositor on a regular, otherwise undesignated checking account was engaged in the construction business and then set off funds deposited in that account to satisfy the depositor's indebtedness, do not, standing alone, remove Norstar from the status of a good-faith purchaser for value.* To lose such good-faith status, a transferee must have had notice of the existence of the trust and must have known or should have known that the trustee was committing a breach of trust in making the transfer *(see,* Restatement [Second] of Trusts §§ 296, 297 [1959]). "When the deposit was made in the contractor's personal account, a presumption arose, upon which the defendant was entitled to rely, that the fund was not a trust fund and that there was no beneficiary entitled to any portion thereof and that presumption continued until annulled by knowledge or adequate notice to the contrary. There is neither evidence nor finding by the court or claim by plaintiff of bad faith on the part of the bank in making the offset" *(Raymond Concrete Pile Co. v Federation Bank & Trust Co., supra,* at 459-460; *see also, Matter of Knox [Columbia Banking Fed. Sav. & Loan Assn.],* 64 NY2d 434, 438).

Knowledge that Bonacquisti, as a general contractor, from time to time might have received payments constituting statutory trust funds would not, by itself, establish Norstar's bad

---

* Transfer by a trustee of trust property in consideration of the extinguishment in whole or part of an antecedent debt is "for value" if the trust property transferred is a negotiable instrument or money (Restatement [Second] of Trusts § 304 [2] [1959]).

faith, under the general criteria applied to determine what facts or circumstances put a transferee of trust assets on notice *(see, Bonham v Coe,* 249 App Div 428, 434-435, *affd* 276 NY 540;* Restatement [Second] of Trusts § 297, comment a [1959]; Bogert, Trusts & Trustees § 894 [2d ed rev]). This conclusion is not altered by the fact that 2 of the 3 Southway checks deposited contained notations referring to a Verona "job". A bank may be charged with knowledge that it is dealing with trust funds when a teller receives for deposit in a trustee's personal account a check drawn to the depositor as trustee or on a trust account *(see, Grace v Corn Exch. Bank Trust Co.,* 287 NY 94, 106; *Bischoff v Yorkville Bank,* 218 NY 106, 111, 113). But the notations on the Southway checks here could only have been suggestive that trust funds were involved if the tellers to whom they were presented or the clerks who processed them also had knowledge of Bonacquisti's business affairs. Surely the bank officers who had such knowledge were not likely to have been aware of the notations on the checks. Thus, the negotiation of the checks, as isolated transactions, can only have legal significance on the basis of constructive, composite knowledge of the bank, an insufficient foundation upon which to posit the actual bad faith required to impose liability on Norstar *(see, Grace v Corn Exch. Bank Trust Co., supra,* at 104-106). Accordingly, Supreme Court erred in granting plaintiff's motion for summary judgment against Norstar.

Under equally well-established principles of trust law, Norstar was also not entitled to have its cross motion for summary judgment granted. A bank having actual knowledge that the personal account of a trustee is comprised essentially of trust assets is a participant in the diversion thereof when it receives any significant portion of the account, by setoff or voluntary payment, in satisfaction of the trustee's personal indebtedness to it *(see, Grace v Corn Exch. Bank Trust Co., supra,* at 106; *Bischoff v Yorkville Bank, supra,* at 112-113). In such an event, the bank is obviously not able to indulge the presumption that the trustee is applying trust assets to a proper purpose *(see, Bischoff v Yorkville Bank, supra; cf., Matter of Knox [Columbia Banking Fed. Sav. & Loan Assn.], supra).* The rule may be less absolute when the account, to the knowledge of the bank, consists of both personal and trust funds and the payment therefrom does not substantially deplete it; the bank is "not called upon to investigate on each occasion whether or not the personal account contained at

that time only trust funds" *(Grace v Corn Exch. Bank Trust Co., supra,* at 105). If Norstar was actually aware that Bonacquisti's account was largely composed of trust property and that the setoff would substantially deplete it, the bank will no longer be able to disavow bad faith simply because of lack of knowledge of the existence of outstanding, matured trust claims of statutory beneficiaries at the time of the offset. Under present Lien Law article 3-A, the trust is created when any asset thereof comes into existence, irrespective of whether there was also then existing a beneficiary of the trust, and continues until all claims have been paid or all trust assets have been expended for the purposes of the trust (Lien Law § 70 [3]).

It follows from the foregoing that Norstar's status as a good-faith purchaser will turn on factors such as its awareness of whether Bonacquisti used its checking account as the principal, regular repository of Lien Law trust assets, and its knowledge of Bonacquisti's financial condition at the time of the setoff, i.e., the latter's resources to pay trust claims when due. Such factors are not conclusively foreclosed by Norstar's papers on the motion and may be exclusively within Norstar's knowledge, none of which plaintiff has had an opportunity to explore through pretrial discovery. Consequently, summary judgment dismissing the complaint as against Norstar is, at the least, premature *(see, Utica Sheet Metal Corp. v Schecter Corp.,* 25 AD2d 928, *modfg* 47 Misc 2d 290).

MAHONEY, P. J., KANE and CASEY, JJ., concur; WEISS, J., not taking part.

Order modified, on the law, without costs, by reversing so much thereof as granted plaintiff's motion; motion denied; and, as so modified, affirmed.