278

In the Matter of TROJAN HARDWARE COMPANY, INC., Respondent, v BONACQUISTI CONSTRUCTION CORPORATION et al., Respondents, and NORSTAR BANK OF UPSTATE NEW YORK, Appellant.

Third Department, November 10, 1988

## APPEARANCES OF COUNSEL

*McNamee, Lochner, Titus & Williams, P. C. (Peter A. Pastore* of counsel), for appellant.

*Marinstein & Marinstein (Elliott F. Marinstein* and *Robert M. Cohen* of counsel), for Trojan Hardware Company, Inc., respondent.

## OPINION OF THE COURT

HARVEY, J.

This appeal involves a dispute over the parameters of a bank's right to setoff under Debtor and Creditor Law § 151. In April 1982, respondent Bonacquisti Construction Corporation opened a savings account at respondent Norstar Bank of Upstate New York into which it deposited $33,500 (hereinafter referred to as account A). The money in account A was assigned to respondent Town of Clarkstown as security to insure site plan compliance by Bonacquisti of construction work it was to complete for Clarkstown.

During 1983 and 1984, Bonacquisti began borrowing from Norstar under an unsecured line of credit evidenced by demand notes. Bonacquisti used this line of credit to borrow $115,000 from Norstar. In 1985, Bonacquisti began making deposits into a second account at Norstar relevant to this case (hereinafter referred to as account B). The deposits into account B apparently were the result of money received by Bonacquisti for work on a construction contract for Southway Realty Corporation in the Town of Verona, Oneida County. Gerrity Company, Inc. purportedly furnished some of the materials for the Southway project.

Bonacquisti subsequently defaulted in the payment of the money it had borrowed from Norstar. Thus, in February 1986, Norstar exercised its right under the loan agreement and set off from account B the entire indebtedness plus interest, for a total of approximately $117,000. Gerrity then commenced a lawsuit against Bonacquisti and Norstar asserting that it had furnished materials for the Southway project and that it had not been paid for these materials. Gerrity alleged that it was a statutory beneficiary of trust funds created under Lien Law article 3-A and that the alleged trust funds had been held in account B, the account against which Norstar had exercised its right of setoff. Both Gerrity and Norstar moved for summary judgment.

In April 1987, Supreme Court granted Gerrity's motion for

summary judgment and awarded it approximately $37,000 *(see, Gerrity Co. v Bonacquisti Constr. Corp.,* 135 Misc 2d 186, *mod* 136 AD2d 59). This court later modified the order by reversing so much thereof as granted summary judgment to Gerrity *(see, Gerrity Co. v Bonacquisti Constr. Corp.,* 136 AD2d 59, *supra).* We found that genuine factual issues existed as to whether Norstar knew or should have known that the deposits were in the nature of trust funds *(supra).*

In the meantime, another Bonacquisti creditor, petitioner, had won a $25,989.19 judgment against Bonacquisti in June 1986. In an attempt to collect that amount, petitioner caused Norstar to be served with an information subpoena with restraining notice and an execution. Norstar responded that account B had no funds in it and that account A with accrued interest had a balance of $42,433.94, but that none of those funds could be released. Norstar explained that it had to honor the April 1982 assignment agreement under which Boncaquisti had pledged account A to Clarkstown as security for Bonacquisti's site plan compliance on the construction job. According to an affidavit submitted on Clarkstown's behalf, an estimated $17,500 in work remained to be done. However, Clarkstown stated this was only an estimate and that additional amounts might ultimately be required to bring the site into compliance.

In March 1987, petitioner commenced this special proceeding, pursuant to CPLR 5225 (b) and 5227, seeking to compel Norstar to turn over to it $25,989.19 from account A to satisfy the judgment petitioner had won. Norstar answered that as fiduciary and/or bailee of the funds, on Clarkstown's behalf, it could not release the funds. Norstar also asserted that if any account A funds remained after Clarkstown enforced its rights, and if Gerrity prevailed on remand in its case against Norstar and Norstar had to relinquish $37,000 from the $117,000 it had taken from account B, then its own set-off rights as to account A would be superior to petitioner's rights.

In the June 1987 decision at issue here, Supreme Court found that Clarkstown's interest in account A was superior and that Clarkstown must commence an action within 12 months to enforce its claim or it would waive its security interest. Norstar does not appeal from this part of the decision. Supreme Court also held that, after Clarkstown exercised or forfeited its rights, petitioner's right to any remaining funds was superior to Norstar's. It is from this aspect of the ruling that Norstar appeals.

Authority for a bank's right to setoff is found in Debtor and Creditor Law § 151, which provides in relevant part: "Every debtor [here, Norstar] shall have the right upon * * * the issuance of any execution against any of the property of; the issuance of a subpoena or order, in supplementary proceedings, against or with respect to any of the property of; or the issuance of a warrant of attachment against any of the property of; a creditor [here, Bonacquisti], to set off and apply against *any indebtedness, whether matured or unmatured,* of such creditor to such debtor, any amount owing from such debtor to such creditor, at or at any time after, the happening of any of the above mentioned events" (emphasis supplied). This statute has been summarized as "confer[ring] upon a garnishee a right to set off any debt owed to it by a judgment debtor" *(Aspen Indus. v Marine Midland Bank,* 52 NY2d 575, 582).

Resolution of the current dispute turns upon whether the statutory phrase "any indebtedness, whether matured or unmatured" should be construed to include the type of contingent liability which, depending upon the outcome of the Gerrity lawsuit, Bonacquisti may owe Norstar. "Indebtedness" refers to the condition of being in debt and debt is generally defined as a fixed and certain obligation *(see, United States v New York, New Haven & Hartford R. R. Co.,* 276 F2d 525, 530, *cert denied sub nom. Tri-Continental Fin. Corp. v United States,* 362 US 961; *Norwich Pharmacal Co. v Barrett,* 205 App Div 749, 752; *Michaels v Chemical Bank,* 110 Misc 2d 74, 76; Black's Law Dictionary 363 [5th ed 1979]). It does not include " 'liabilities which are contingent in that it is uncertain as to whether anything will ever be demandable' " *(United States v New York, New Haven & Hartford R. R. Co., supra,* at 530, quoting *Sharpe v First Natl. Bank,* 220 Wis 506, 264 NW 245, 247). A generally accepted definition can, of course, be expanded or limited by the Legislature. Indeed, Debtor and Creditor Law § 270 has expansively defined debt to include "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or *contingent"* (emphasis supplied). This definition, however, is limited in application to fraudulent conveyances under article 10 and does not extend to the right of setoff under article 6-A. Since no definitional expansion of the term "debt" is provided in the applicable statute, the term's ordinary and accepted meaning should be applied in construing Debtor and Creditor Law § 151 *(see,* McKinney's Cons Laws of NY, Book 1, Statutes

§ 94; *see also, Matter of Margolis & Meadow [New York Credit Men's Assn.],* 252 App Div 513, 514-515).

The statutory phrase "matured or unmatured" does not provide authority to expand the meaning of indebtedness to include contingent liabilities. There is an important distinction between an unmatured debt and a contingent liability. An unmatured debt is generally evidenced by a contract and is a readily discernible amount which can be expected in the normal course of events to be due and owing in the future, although the obligation has not yet ripened *(see, Matter of Margolis & Meadow [New York Credit Men's Assn.], supra; cf., Publishers Distrib. Corp. v Independent News Co.,* 55 AD2d 571). A contingent liability, however, is marked by uncertainty as to whether any obligation will ever arise *(see, e.g.,* Black's Law Dictionary 290-291 [5th ed 1979]).

Here, Bonacquisti's liability to Norstar is clearly contingent. It is dependent upon the resolution of the lawsuit between Gerrity and Norstar, an action involving no issue between Norstar and Bonacquisti. If liability is found against Norstar, it will be based on Norstar's bad-faith actions in exercising its original setoff against trust funds in account B. The proceeds of that original setoff fully satisfied Bonacquisti's indebtedness to Norstar. Despite the fact that the indebtedness was satisfied, Norstar seeks to maintain a right of setoff against account A in the event it is found to have diverted trust funds and thus is liable to Gerrity. We do not believe that the term indebtedness in Debtor and Creditor Law § 151 should be expanded to encompass such a contingent situation.

Norstar's argument that account A is not currently subject to levy because all or part of it has been assigned to Clarkstown has been considered and found unpersuasive *(see, ABKCO Indus. v Apple Films,* 39 NY2d 670; *Hickey Co. v Port of N. Y. Auth.,* 23 AD2d 739; Siegel, NY Prac § 489, at 659-662).

KANE, J. P., MIKOLL, LEVINE and MERCURE, JJ., concur.

Order affirmed, with costs to petitioner.