OPINION OF THE COURT
Thomas A. Standee, J.
The plaintiff, LeChase Data/Telecom Services, LLC (LDT), submits a motion seeking an order granting a severance of all claims against defendants MCI WorldCom Network Services, Inc. and HSBC Bank, and an order granting plaintiff summary judgment against defendant, Business Funding Group, Inc., in the action under Index No. 2001/03804 and against Mark Burgholzer, doing business as Business Funding Group, in the action under Index No. 2002/05559 (collectively Business Funding).
The defendants, Business Funding Group, Inc. and Mark Burgholzer, doing business as Business Funding Group, submit a cross motion seeking an order granting summary judgment in favor of defendants, Mark Burgholzer, doing business as Busi *197 ness Funding Group (Index No. 2002/05559), and Business Funding Group, Inc. (Index No. 2001/03804), dismissing plaintiffs claims against them, together with costs and disbursements.
The plaintiffs second amended complaint in the action under Index No. 2001/3804 alleges two .causes of action against the entity Business Funding Group, Inc. In the fourth cause of action plaintiff asserts that Business Funding was the recipient of trust funds unlawfully diverted by Lighthouse Communication Design, Inc. and that defendant knew or should have known that such funds constituted statutory trust funds pursuant to Lien Law § 70. Further, that all trust fund monies received by defendant are to be held by defendant as trustees for the benefit of the plaintiff and any other statutory beneficiary.
The fifth cause of action asserts that Business Funding violated section 72 of the Lien Law by accepting, retaining and applying the trust funds for purposes other than trust purposes as defined by article 3-A of the Lien Law. This cause of action claims that the assignment by Lighthouse to Business Funding is invalid and that Business Funding knew or should have known that the funds represented payments on a construction contract and constituted statutory trust funds.
The second action under Index No. 2002/0559 asserts similar claims against Mark Burgholzer, doing business as Business Funding Group.[1] Facts
This action was originally commenced against additional defendants, including Lighthouse Communication Design, Inc.[2] Lighthouse Communication Design, Inc. entered into an “Outside Plant Engineering and Project Management Agreement by and between MCI WorldCom Network Services, Inc. and Lighthouse Communication Design, Inc.” This October 1999 agreement was between Lighthouse and MCI to design and construct telecommunications networks throughout the United States. All the work to be performed by Lighthouse *198 would be set forth in detailed work orders for each individual project.
The plaintiff, LeChase Data/Telecom Services, LLC, is a construction company that furnishes and installs telecommunication and data transmission facilities to new and existing buildings. On September 15, 2000 LDT entered into a subcontract entitled “construction agreement” with Lighthouse Communication Design, Inc. to install several miles of fiber optic cable, both underground and aboveground. LDT subcontracted with Lighthouse to perform work under work orders issued by MCI on October 27, 1999 for the “Time Warner Overbuild” and on May 15, 2000 for the “Henrietta Loop Overbuild.” These work orders were subsequently modified by change orders. In accordance with the construction agreement, Lighthouse agreed to pay invoices of LDT for work completed upon approval by MCI WorldCom and receipt of payment from MCI WorldCom.
Prior to the construction agreement with LDT in September 2000, Lighthouse Communication Design, Inc. entered into an “accounts receivable purchase agreement” on January 31, 2000 with Business Funding Group (factoring agreement).[3] This factoring agreement provided that Lighthouse would sell and assign its right, title and interest in and to accounts receivable to Business Funding Group in exchange for money advances. The agreement indicates that Lighthouse is “engaged primarily in the Telecommunication Design/Project Management business.” Further, it provides that accounts will be identified by separate and subsequent written assignments. There were numerous “account purchase addendum” forms executed wherein Lighthouse sold and assigned to Business Funding Group specifically identified accounts receivable due to Lighthouse from MCI WorldCom. In fact, these account purchase addendum documents identify accounts receivable for invoices on the work orders for the “Time Warner Overbuild” and for the “Henrietta Loop Overbuild.”
*199 Shortly after entering into the accounts receivable purchase agreement with Business Funding, Lighthouse sent a letter dated February 4, 2000 to MCI WorldCom advising that “payments on all invoices from our company dated on or after January 31, 1999 must be mailed to: Business Funding Group c/o Lighthouse Communication Design, Inc. . . .” Lighthouse also requested that MCI acknowledge receipt of the notice of the assignment to Business Funding. Business Funding filed a UCC-1 financing statement in the clerk’s office on February 14, 2000 covering accounts receivable of Lighthouse Communication Design, Inc.
On August 8, 2001 the plaintiff filed a notice under mechanic’s Lien Law against Lighthouse Communication Design, Inc. for labor performed on the installation of underground telecommunication lines for the projects at issue. Plaintiff asserts that its work under the construction agreement with Lighthouse was substantially completed by February 2001, with only a punch list remaining. Plaintiff claims that it is owed $973,475.32, of which Lighthouse paid $453,000, leaving an unpaid balance of $520,475.32.
I. Motions for Summary Judgment
The plaintiff, LDT, requests summary judgment against defendants on the grounds that Business Funding and Burgholzer received statutory funds exceeding the amount due LDT and the receipt of such funds was based upon void assignments and with actual or constructive knowledge of the trust nature of the funds. The defendants, Business Funding Group, Inc. and Mark Burgholzer, doing business as Business Funding Group, seek summary judgment dismissing the complaints of the plaintiff. All the arguments for summary judgment rest upon the application of the Lien Law.
In accordance with article 2 of the Lien Law, the plaintiff filed mechanics’ liens on August 8, 2001 for the sums allegedly remaining due from Lighthouse Communication on the two telecommunications projects. The Lien Law provides certain protections to parties involved in transactions which may affect contracts or the money due on improvements to real property.
The Lien Law at article 3-A creates the protective device of a statutory trust for all trust beneficiaries. “The class of trust beneficiaries is the same as the class of persons who are given the right to file mechanics’ liens” (City of New York v Cross Bay Contr. Corp., 93 NY2d 14, 19-20 [1999]). The primary purpose of the trust created under article 3-A of the Lien Law is “to *200 ensure that ‘those who have directly expended labor and materials to improve real property ... at the direction of the owner or general contractor’ receive payment for the work actually performed” (RLI Ins. Co., Surety Div. v New York State Dept, of Labor, 97 NY2d 256, 264 [2002] [citations omitted]). Article 3-A of the Lien Law establishes that a trust fund is created by all funds received by an owner, contractor, or subcontractor for or in connection with an improvement of real property (Lien Law §70).
The trust assets, of which a contractor is a trustee, shall be held and applied for the payment of claims of subcontractors, among others (Lien Law § 71 [2] [a]). The trust assets, of which an owner is a trustee, shall be held and applied for the payment of the cost of improvements (Lien Law § 71 [1]). Money paid by an owner “to anyone in satisfaction of the contract would be impressed with this broadly inclusive trust” created by article 3-A of the Lien Law (City of New York v Cross Bay, 93 NY2d at 19). “Use of trust assets for any purpose other than the expenditures authorized in Lien Law § 71 before all trust claims have been paid or discharged constitutes an improper diversion of trust assets, regardless of the propriety of the trustee’s intentions” (RLI Ins. at 263 [citations omitted]; see, Lien Law § 72 [1]).
The plaintiff here seeks relief under the Lien Law for determinations that trust assets were unlawfully diverted, that the monies paid to Business Funding constitute trust funds, that these monies are held as trustees for the benefit of the statutory beneficiaries, including the plaintiff, and that these funds were applied for purposes other than trust purposes such as to be a diversion of trust assets.
A. Assignment Pursuant to a Factoring Agreement
In this case Lighthouse Communication, as trustee of the funds to be paid by the owner MCI for completion of the Henrietta Loop Overbuild and Time Warner Overbuild, entered into an “accounts receivable purchase agreement” with Business Funding (factoring agreement). Although not entitled an “assignment,” this factoring agreement gave to the defendants the right to collect directly the monies due from MCI for work performed by Lighthouse Communication. Under this arrangement, Lighthouse Communication sold its future receivables to obtain advance funds for the operation of its business. This factoring agreement established an assignment to Business *201 Funding of monies due to Lighthouse under the contract with MCI.[4]
1. General Rights as Assignee
The rights of an assignee of a contract can be no greater than the rights of the assignor (see General Ins. Co. of Am. v Tilcon N.Y., 294 AD2d 195 [1st Dept 2002]; Aspro Mech. Contr. v Fleet Bank, 293 AD2d 97 [2d Dept 2002]; New York Natl. Bank v Primalto Dev. & Constr. Co., 270 AD2d 22 [1st Dept 2000]). Thus, the rights of Business Funding, as assignee of the contract funds to be due and owing from MCI, can be no greater than those of the assignor, Lighthouse Communication, whose right to contract funds from MCI was subject to outstanding trust obligations (id.). Business Funding, as assignee, is a statutory trustee under Lien Law article 3-A.
The payments made by MCI to Business Funding under the factoring agreement for payment on the Henrietta Loop Overbuild and the Time Warner Overbuild are subject to the Lien Law trust obligations, including the rights of the plaintiff as a trust beneficiary.[5] The transfer or use of trust assets for any purpose other than a purpose of the trust is a diversion of trust assets (Lien Law § 72 [1]). Thus, the assignments allowing payments from MCI to Business Funding are unenforceable as an improper diversion of Lien Law article 3-A trust assets (Lien Law § 72; see Matter of RLI Ins. Co. v New York State Dept, of Labor, 97 NY2d 256, 263 [2002]; General Ins. at 195; Aspro Mech. at 99; New York Natl. Bank at 23). The plaintiff, as trust beneficiary, may enforce the trust against Business Funding to obtain distribution of trust assets for payment (Lien Law § 77).
*202 However, Business Funding, as a statutory trustee, can claim that Lien Law § 77 does not apply and that the trust funds used to repay advances to Lighthouse Communication were used for a trust purpose. This defense to a claim for diversion of trust assets requires the filing of a notice of assignment or notice of lending under the Lien Law. (Lien Law §§ 13, 73; see Aspro Mech. at 99-100.)
2. Notice of Assignment/Notice of Lending
A notice of assignment is considered an affirmative defense in any action for diversion of trust assets[6] (Lien Law § 73; Aspro Mech. Contr. v Fleet Bank, 293 AD2d 97 [2d Dept 2002] [where no notice of lending filed, repayment of loans to itself, with knowledge of trust status, was a diversion of trust assets]). The filing of a “notice of assignment” or a “notice of lending” pursuant to the statute affords an assignee, as the transferee of trust assets, a defense against trust claims (Eljam Mason Supply v I.F. Assoc. Corp., 84 AD2d 720, 721 [1st Dept 1981]).
The Lien Law provides that Business Funding, as the assignee of monies due or to become due under a contract for the improvement of real property, has priority over any party filing a notice of hen subsequent to the filing of the assignment (Lien Law § 13 [1-a]). This priority is created by duly filing the “notice of assignment” in the county clerk’s office where the property is located pursuant to the requirements set forth at Lien Law § 15. The filing of a notice of assignment protects the interests of the assignee, Business Funding.
Here, there was never any “notice of assignment” filed pursuant to Lien Law § 15 nor a “notice of lending” filed pursuant to Lien Law § 73 by the assignee Business Funding Group disclosing the relationship created by the factoring agreement.
“Since [assignee of the subcontractor] had ‘available a means of protecting its interest [by filing a notice of lending or notice of assignment] and . . . failed to take advantage of it’ (American Blower Corp. v James Talcott, Inc., 10 NY2d 282, 286) its rights should be subordinated to the unpaid creditors of the [subcontractor] who are members of the *203 statutorily protected class under the Lien Law.” (Eljam Mason at 721.)
By failing to protect its interests by a proper filing, Business Funding should be obligated to LDT as a trust beneficiary.
Further, an assignment is not valid for any purpose unless a “notice of assignment” is filed in accordance with the Lien Law (Lien Law § 15 [1]; see American Blower Corp. v James Talcott, Inc., 10 NY2d 282 [1961]; Town & Country Linoleum & Carpet Co. v Tropea, 262 AD2d 1045 [4th Dept 1999]). The defendant, Business Funding, never filed a “notice of assignment.” Therefore, the purported assignment effectuated by the factoring agreement and subsequent assignments of specific invoices are not valid for any purpose (Lien Law § 15).
Even though the assignment was not valid for any purpose, the statutory trust assets due from MCI were paid directly to Business Funding. Therefore, under article 3-A of the Lien Law, Business Funding became the statutory trustee of the funds due to Lighthouse Communication from MCI. These funds were all subject to the statutory trust created for the benefit of the trust beneficiaries. The plaintiff, LDT, is a tmst beneficiary under the statute that has not been paid for work performed for Lighthouse Communication on the Henrietta Loop Overbuild and Time Warner Overbuild. Under the Lien Law, the payments to Business Funding Group must be used to pay the trust beneficiary LDT.
The defendants do not refute that this is an accurate reading of the Lien Law and the requirement of filing a “notice of assignment.” However, defendants claim that coexisting with the protections afforded an assignee by the filing of a notice of assignment under Lien Law § 15 is a separate defense under Lien Law article 3-A for a purchaser in good faith without notice.
B. Defense of Purchaser in Good Faith Without Notice
Article 3-A of the Lien Law considers any transfer of trust assets before payment of all trust claims to be a diversion of trust assets.
“Any transaction by which any trust asset is paid, transferred or applied for any purpose other than a purpose of the trust as stated in subdivision one or subdivision two of section seventy-one, before payment or discharge of all trust claims with respect to the trust, is a diversion of trust assets, whether or not there are trust claims in existence at the time of the transaction, and if the diversion occurs by the *204 voluntary act of the trustee or by his consent such act or consent is a breach of trust.” (Lien Law § 72 [1].)
However, there is an exception stated to this general principle: “Nothing in this article affects the rights of a holder in due course of a negotiable instrument or of a purchaser in good faith for value and without notice that a transfer to him is a diversion of trust assets.” (Lien Law § 72 [1].) Defendants assert as a defense that they are a purchaser in good faith for value and without notice.[7]
Defendants’ argument is that Business Funding was a “purchaser in good faith for value and without notice.” (Lien Law § 72 [1].) If Business Funding is able to show that it was a purchaser in good faith for value and without notice of the fact that a transfer to him was a diversion of trust assets, then nothing in article 3-A of the Lien Law affects the rights of Business Funding to monies received pursuant to the accounts receivable purchase agreement.
This “good faith purchaser without notice” exception is consistent with Lien Law §§ 13 and 15, because the requirements for filing a notice of assignment imply that the assignee knew that the assignment was for contracts or money due for the performance of labor or furnishing materials, for the improvement of real property. The “good faith purchaser without notice” exception protects an assignee, who advances money based on assignment of monies to become due, but without any knowledge or notice that the underlying transactions are covered by the trust provisions of the Lien Law.
If Business Funding was a purchaser in good faith for value and without notice that the transfers were a diversion of trust assets, then the transfers made pursuant to the factoring agreement are not a diversion of trust assets.
1. What Definition Applies
To apply the “good faith purchaser without notice” defense to the facts it is necessary to review the meaning of this standard. The definition of “good faith purchaser without notice” can be looked at from (i) general common-law trust principles, (ii) statutory definitions contained in the Uniform Commercial Code, and (iii) specific cases applying the Lien Law provisions.
*205 (i) Common-Law Trust Principies
Courts have held that general common-law trust principles still apply to the good faith purchaser defense of a transferee of trust assets under the trust provisions of the Lien Law (Gerrity Co. v Bonacquisti Constr. Corp., 136 AD2d 59, 63 [3d Dept 1988]; 1959 Report of NY Law Rev Commn, at 221; see I-T-E Imperial Corp. — Empire Div. v Bankers Trust Co., 51 NY2d 811 [1980]).
“[Under the general trust law principles] [t]o lose such good-faith status, a transferee must have had notice of the existence of the trust and must have known or should have known that the trustee was committing a breach of trust in making the transfer (see, Restatement [Second] of Trusts §§ 296, 297 [1959]).” (Gerrity at 63 [emphasis added].)
The Court required notice that a trust existed and constructive notice that the trustee was committing a breach.
(ii) UCC Definition
Under the UCC “good faith” “means honesty in fact in the conduct or transaction concerned” (UCC 1-201 [19]). The UCC defines “notice” as follows:
“A person has ‘notice’ of a fact when
“(a) he has actual knowledge of it; or
“(b) he has received a notice or notification of it; or
“(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.” (UCC 1-201 [25].)
These definitions are subject to additional definitions contained in specific articles or parts of the UCC, and apply unless the context otherwise requires (UCC 1-201).[8]
(iii) Case Law Definitions
Many of the cases relied upon by the parties in this proceeding involve the application of the exception to Lien Law article 3-A for “a holder in due course of a negotiable instrument” (Lien Law § 72 [1]). In these cited cases, the plaintiff therein is attempting to enforce a claim for diversion of trust assets against a bank which was a depository of checks by a trustee or the purchaser of negotiable paper (see I-T-E Imperial Corp. v Bankers Trust Co., 51 NY2d 811 [1980], affg 73 AD2d 861 [1st *206 Dept 1980] [plaintiff sought to enforce statutory trust against bank for funds paid to a construction contractor and deposited in its account; at a later time the account was set off for a past-due note]; Chemical Bank of Rochester v Haskell, 51 NY2d 85 [1980] [reviews good faith and “without notice” as used in UCC 3-302 for commercial paper and the status of holder in due course]). These cases are clearly distinguished.
The litigants here also discuss the Court of Appeals statement that the provisions of the Uniform Commercial Code setting forth the concept of notice under UCC articles 3 and 4 change the notice requirements from an objective to a subjective standard (Chemical Bank at 91; I-T-E Imperial, 51 NY2d at 814). The Court of Appeals deemed such change on the concept of notice to amend the Lien Law as well (see I-T-E Imperial Corp. at 813-814; Chemical Bank of Rochester v Haskell, 51 NY2d 85 [1980]). However, article 3 of the UCC applies to commercial paper and article 4 of the UCC applies to bank deposits and collections. Thus, these UCC articles specifically apply to the status of “a holder in due course” as used in the Lien Law article 3-A exception. These are also not relevant in the instant case because Business Funding is not claiming to be a holder in due course.
(iv) Applicable Definition of Notice
As the cases cited by the parties are not directly on point, the question remaining on this motion is whether the restrictive definition of “notice” contained in articles 3 and 4 of the UCC also changes the common-law trust principles and general UCC “notice” definitions previously stated as applicable to “a good faith purchaser for value without notice” under article 3-A of the Lien Law.
It is this court’s position that the concept of “notice” expressed in articles 3 and 4 of the UCC, and applied by the cited cases, does not specifically apply to a “good faith purchaser for value without notice.”[9] The exception stated in Lien Law § 72 (1) for a good faith purchaser for value without notice is stated as a separate and distinct category from a holder in due course.[10]
*207 Therefore, the specific definitions contained in UCC articles 3 and 4 do not apply to “good faith purchaser for value without notice” under Lien Law § 72 (1). To define “good faith purchaser for value without notice” as applicable to the exception stated in Lien Law § 72 (1), this court must rely upon the general principles of trust law and the general statutory definitions contained in the UCC for “good faith” and “notice.”
2. Definition of “Good Faith Purchaser For Value Without Notice” Under Lien Law § 72 (1)
Pursuant to the general definitions of the UCC, “notice” exists when there is actual knowledge of the fact, when notice or notification is received of the fact, or when “from all the facts and circumstances known to him at the time in question he has reason to know that [the fact] exists” (UCC 1-201 [25] [c]). These UCC definitions for “notice” are consistent with the common-law definitions where a transferee must have “notice” that a trust exists and knows or should know that the trustee was committing a breach of trust in making a transfer (see Gerrity at 63).
In cases involving Lien Law article 3-A statutory trusts, where the claimants were not holders in due course, courts after a nonjury trial have assessed whether there was actual or constructive knowledge that the transferred monies were part of a statutory trust fund (Northern Structures v Union Bank, 57 AD2d 360 [4th Dept 1977] [no designation on bank account of trust nature, but totality of evidence shows knowledge of trust nature]; Eljam Mason Supply v I.F Assoc. Corp., 84 AD2d 720 [1st Dept 1981] [taken together, all the evidence is sufficient to charge the factor with knowledge that the payments represented monies due for work performed on the construction site]). In determining whether there was actual or constructive knowledge of the monies being part of a statutory trust fund the courts reviewed, among other things, the business documents, letters addressing the transaction, the information exchanged regarding the nature of the business, and knowledge or contacts concerning the business of the assignor.
Based upon the general principles of trust law and the UCC statutory definitions of “notice,” the notice requirement under Lien Law § 72 for a “good faith purchaser” are those defined in UCC 1-201 (25). Notice that a transfer is a diversion of trust as *208 sets for a good faith purchaser for value under Lien Law § 72 (1) occurs when there is actual knowledge, when there is a notice or notification, or from all the facts and circumstances known at the time of the transfer there is reason to know that it is a diversion of trust assets.
3. Whether Business Funding Received Transfers Without Notice
The additional question presented is whether the defendant Business Funding had “notice” that the transfers to Business Funding, via the assignments from Lighthouse Communication of all payments from MCI, were the subject of a statutory trust pursuant to article 3-A of the Lien Law.[11] The Lien Law creates the trust and delineates that any transaction where trust assets are transferred for any purpose other than a trust purpose is a diversion of trust assets (Lien Law § 72 [1]).
The evidence presented on this motion spans a period of time from when Business Funding and Lighthouse Communication entered into the initial accounts receivable purchase agreement through the discovery obtained in this lawsuit. The accounts receivable purchase agreement is a factoring agreement, where Lighthouse assigns to a factor the right to collect accounts receivable in exchange for cash advances, at a discounted rate, from the factor. The agreement was entered into in January 2000 and indicated that Lighthouse was “engaged primarily in the Telecommunication Design/Project Management business.” Thereafter, Business Funding entered into numerous account purchase addendum for the purchase and assignment of specifically described accounts receivable. These include accounts receivables due from MCI WorldCom for the projects worked on by plaintiff.
The agreement provides Business Funding with the right to review business records of Lighthouse. The work order of October 2000 on the Time Warner Overbuild indicates that the project will link the Linden Oaks node to the Henrietta node to the Clinton Square node, “project will consist of new and existing underground” and “project will also provide termination equipment at each site and all necessary field splicing.” The October 2000 work order on the Henrietta Overbuild states that the project will provide a connection to previously placed backbone; “the route will consist mainly of new aerial attachments on 198 poles with at least 3 underground crossings”; and *209 setting forth the routes, crossings, poles, aerial, and underground locations; and that the cable will terminate at the Henrietta node.
Both of these work orders state the following:
“The terms and conditions of the Master Service Agreement (Contract #C-7027) between WorldCom Network Services, Inc. and Lighthouse Communication Design, Inc. dated October 26, 1999 shall control by reference and incorporation the services to be provided under this work order.”
This underlying agreement sets forth that MCI WorldCom is contracting for services consisting of design, engineering, project management, procurement, construction, operation, maintenance, relocation and replacement of various telecommunications network projects (MCI agreement at Whereas Clause). The business records of Business Funding indicate that the construction managers were contacted on a regular basis at MCI WorldCom to confirm that invoiced work was complete before advances were made; there were various e-mails and business notes regarding contact with MCI WorldCom; and there was information on the Henrietta Overbuild job invoices. Lighthouse Communication advised MCI WorldCom that on all invoices from Lighthouse payments must be mailed to Business Funding Group. All payments due to Lighthouse for invoices on the Henrietta Overbuild and Time Warner Overbuild projects were paid directly to Business Funding by MCI WorldCom.
The defendant, Business Funding, asserts that it had no actual knowledge that Lighthouse Communication was in the construction business, had no knowledge of subcontractors being involved in any of the projects, and that there were no invoices indicating monies due to subcontractors. The defendant claims that it had no actual or constructive knowledge of any diversion of trust fund assets under article 3-A of the Lien Law.
There are numerous facts presented regarding the information exchanged among Business Funding, Lighthouse Communication, and the owner MCI. The defendant avers that he had no actual knowledge and no information leading to constructive knowledge that the funds being paid to it by MCI were trust assets. Based on all the evidence presented there is a showing by Business Funding of a question of fact as to whether it had notice that the transfers under the assignments were a diversion of trust assets.
*210 C. Conclusion
The funds paid to Business Funding by MCI WorldCom for the invoices of Lighthouse Communication on the Henrietta Overbuild and Time Warner Overbuild projects were trust assets. Business Funding failed to file the required notice of assignment; therefore the assignments are not valid for any purpose. However, Business Funding raises the exception to the application of article 3-A of the Lien Law for a purchaser in good faith for value and without notice that a transfer is a diversion of trust assets. This exception, if applicable, protects the rights of Business Funding from any claims for diversion of trust assets.
There is a question of fact whether the defendant Business Funding is a good faith purchaser for value and without notice of the diverted trust assets. The motion by the plaintiff for summary judgment against Business Funding is denied. The motion by the defendant for summary judgment dismissing the complaints of the plaintiff is denied.
Order
Based upon all the papers submitted in support and in opposition to these motions, upon the above decision, and after due deliberation, it is hereby ordered that the motion of LeChase Data/Telecom Services, LLC, on its own behalf and on behalf of all others similarly situated, for summary judgment against the defendant, Business Funding Group, Inc., under Index No. 2001/03804, in the amount due and owing from Lighthouse Communication on the Henrietta Loop Overbuild and Time Warner Overbuild projects is denied; it is further ordered that the motion of LeChase Data/Telecom Services, LLC, on its own behalf and on behalf of all others similarly situated, for summary judgment against the defendant, Mark Burgholzer, doing business as Business Funding Group, under Index No. 2002/05559, in the amount due and owing from Lighthouse Communication on the Henrietta Loop Overbuild and Time Warner Overbuild projects is denied; it is further ordered that the motion of Mark Burgholzer, doing business as Business Funding Group, and Business Funding Group, Inc., for summary judgment dismissing the respective complaints of LeChase in each action is denied; it is further ordered that the motion of LeChase Data/Telecom *211 Services, LLC, on its own behalf and on behalf of all others similarly situated, to sever all claims against defendants MCI WorldCom Network Services, Inc. and HSBC Bank is granted.

. Mark Burgholzer, who was operating a doing business as named Business Funding Group, incorporated Business Funding Group, Inc. in January 2001.

. Lighthouse Communication Design, Inc. and other originally named defendants filed voluntary petitions for bankruptcy relief between May 2001 and June 2002. By order of September 9, 2002 this court severed Lighthouse Communication Design, Inc. and the other defendants who filed for bankruptcy from the case and stayed further proceedings against the bankrupt defendants.

. When this agreement was entered into, the factoring entity was Business Funding Group, a doing business as of Mark Burgholzer. In January 2001 Business Funding Group was incorporated under the name Business Funding Group, Inc. There are no documents submitted to show that all contracts, bank accounts or assets were transferred from the doing business as to the corporation. Nevertheless, the payments from MCI continued to be sent to the successor corporation, deposits were made, and the terms of the agreement and the factoring agreement continued unchanged with the corporate entity.

. The accounts receivable purchase agreement states that “[a]ccounts shall be identified by separate and subsequent written assignments on a form to be provided to Client by Factor; however, in the absence of such separate written assignment, this Agreement shall be deemed to evidence the assignment of such Accounts sold” (accounts receivable purchase agreement § 1).

. Any assignment involving a factoring arrangement requires the assignor to covenant to receive the money advanced as trust funds to be applied to payment of trust claims. Lien Law § 13 (6) requires “[e]very assignment of moneys . . . due or to become due under a contract for the improvement of real property shall contain a covenant by the assignor that he will receive any moneys advanced thereunder by the assignee and will hold the right to receive such moneys as trust funds to be first applied to the payment of trust claims as defined in section seventy-one of the lien law, and that he will apply the same to such payments only, before using any part of the moneys for any other purpose.”
This covenant was not contained in the factoring agreement between Lighthouse Communication and Business Funding.

. Pursuant to Lien Law § 73 a notice of lending is an affirmative defense to a trust claim and if the defense is established the transferee of funds is entitled to a credit for the amount of advances established to be transferred pursuant to the notice of lending. This statute also deems a notice of assignment, which meets the requirements of Lien Law § 15 and is properly filed, to be a notice of lending (Lien Law § 73 [3] [d]).

. Defendants do not claim to be holders in due course of a negotiable instrument.

. The “notice” for a holder in due course was effectively changed under the Lien Law by the adoption of the Uniform Commercial Code and the specific concept of notice under UCC article 3 (commercial paper) and article 4 (bank deposits and collections) (see I-T-E Imperial at 813-814).

. By statute good faith is relevant and considered when determining whether a party is a holder in due course under UCC 3-302 (1), but that is not the “good faith purchaser for value” standard set forth in Lien Law § 72.

. Lien Law § 72 (1) states as follows: “Nothing in this article affects the rights of a holder in due course of a negotiable instrument or of a purchaser in *207 good faith for value and without notice that a transfer to him is a diversion of trust assets.”

. Neither party refutes that Business Funding is a purchaser for value.